**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | Civil Action No.: 1:18-cv-03608-VSB |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| MACQUARIE INFRASTRUCTURE CORPORATION, JAMES HOOKE, JAY DAVIS, LIAM STEWART, and RICHARD D. COURTNEY, | |
| Defendants. | |
| DANIEL FAJARDO, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 1:18-cv-03744-VSB |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| MACQUARIE INFRASTRUCTURE CORPORATION, JAMES HOOKE, JAY DAVIS, LIAM STEWART, and RICHARD D. COURTNEY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PAUL ARTHUR REIMER'S MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

ARGUMENT ................................................................................................................. 5

   I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................... 5

   II.   THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF......................... 6

     A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff .................... 6

     B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ...................................... 7

        1.   Movant Filed a Timely Motion ................................................................................. 8

        2.   Movant Has the Largest Financial Interest in the Relief Sought By the Class ......... 8

        3.   Movant Meets Rule 23's Typicality and Adequacy Requirements ......................... 9

          (i)   Movant's Claims Are Typical of the Claims of the Class................................. 10

          (ii)   Movant Will Fairly and Adequately Protect the Interests of the Class .............. 12

   III.   MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED............................... 13

CONCLUSION.............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................. 10

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................ 6, 8

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................ 11

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) .................................................................................... 10

*In re eSpeed, Inc., Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................ 2

*In re GE Secs. Litig.*,
  No. 09-Civ.-1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ................. 12

*In re Milestone Scientific Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) .................................................................................. 12

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 8, 2008) ................. 10

*In re Oxford Health Plans, Inc. Sec. Litig*,
  182 F.R.D. 42 (S.D.N.Y.) ........................................................................................ 10

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ................................................................................. 5, 6

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................. 8

*Mitchell v. Complete Mgmt., Inc.*,
  No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 17, 1999) ........................ 5

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) .............................................................................. 12

*Primavera Familienstifung v. Askin*,
  173 F.R.D. 115 (S.D.N.Y. 1997) ............................................................................... 5

*Reimer v. Ambac Fin. Group, Inc.*,
  No. 0-Civ.-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) .................... 11

*Richman v Goldman Sachs Grp*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ............................................................ 11

*Sofran v. Labranche & Co.*,
    220 F.R.D. 398 (S.D.N.Y. 2004) .............................................................. 8

*Strougo v. Brantley Capital Corp.*,
    243 F.R.D. 100 (S.D.N.Y. 2007) ............................................................ 10

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...................................................... 5

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ............ 9

*Weisz v. Calpine Corp.*,
    No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ............ 5

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................... 5, 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A) ................................................................. 6, 8

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................. 8

15 U.S.C. § 78u-4(a)(3)(B) ............................................................... passim

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................. 8, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................... 7, 13

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ........................................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...................................................... 13

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................... 13

15 U.S.C. § 78u-4(e) .......................................................................... 9

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................... 2

Fed. R. Civ. P. 42(a) ......................................................................... 5

Rule 23 ................................................................................................................. *passim*

Movant Paul Arthur Reimer ("Mr. Reimer" or "Movant"), on behalf of himself and all similarly situated persons, respectfully submits this Memorandum of Law in support of his motion ("Motion"): (1) consolidating the above-captioned Related Actions;[1] (2) appointing Movant as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired the securities of Macquarie Infrastructure Corporation ("Macquarie" or the "Company") between February 22, 2016 and February 21, 2018, both dates inclusive; (3) approving Movant's selection of the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel for the putative class; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court are two related securities class actions brought on behalf of all persons who purchased or otherwise acquired the securities of Macquarie Infrastructure Corporation ("Macquarie" or the "Company") (collectively, the "Class") between February 22, 2016 and February 21, 2018, both dates inclusive (the "Class Period"). Plaintiffs in the Related Actions allege violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. § 78u-4(a)(3)(B) (the "PSLRA"), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In*

---

[1]     The "Related Actions" pending in this Court are: *City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corporation, Inc., et al.*, C.A. No. 1:18-cv-03608-VSB (the "*Riviera Beach* Action") and *Fajardo v. Macquarie Infrastructure Corporation, Inc., et al.*, C.A. No. 1:18-cv-03744-VSB (the "*Fajardo* Action").

*re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the parties moving for lead of the consolidation action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted). Movant has lost approximately $245,070.42 as a result of the alleged fraud during the Class Period.[2] Movant believes that he has the largest financial interest in the outcome of this case. Moreover, Movant satisfies the requirements of Rule 23 in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[3]

For the reasons summarized herein and discussed more fully below, Movant's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

Macquarie's International-Matex Tank Terminals ("IMTT") provides bulk liquid storage and handling services at 12 marine terminals in the United States and Canada and is Macquarie's most important business segment. ¶2[4]

Throughout the Class Period, the Company emphasized IMTT's "very strong" performance and "high" utilization rates. ¶3. At multiple investor conferences during the Class Period, the Company represented that the IMTT business experienced stable, "steady as she goes" performance, and "very, very stable" utilization rates. *Id.*

---

[2]     Certifications identifying Movant's transactions in Macquarie, as required by the PSLRA, as well as charts identifying his losses, are attached to the Declaration of Shannon L. Hopkins, dated June 25, 2018 ("Hopkins Decl."), as Exhibits A and B, respectively.

[3]     The "Class" is comprised of all persons, other than defendants, who purchased or otherwise acquired Macquarie securities during the Class Period.

[4]     Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the *Riviera Beach* Action on April 23, 2018. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

Defendants specifically touted IMTT's consistently high utilization rates, which they claimed averaged 94% over the past 10 years. For example, during an earnings call on February 22, 2017, regarding the Company's 2016 year-end financials, the Company's then-Chief Executive Officer, Defendant James Hooke ("Hooke"), emphasized IMTT's "very strong" utilization rates and assured investors that IMTT performance would remain strong, noting that "we have every incentive to keep those tanks as full as we can, and we will." *Id.* Similarly, at an investor conference on May 10, 2017, the Company's Head of Investor Relations, Defendant Jay Davis ("Davis"), reiterated that "utilization rates have remained very, very high." *Id.*

Macquarie executives further represented to investors that any declines in IMTT's storage utilization were temporary and due only to routine maintenance, such as tank cleaning and inspection. ¶4. Macquarie executives assured investors that utilization would remain high into 2018 because "the basic services nature of the business gives us good visibility." *Id.*

Significantly, the Company only disclosed to investors the categories of commodities serviced by IMTT (such as chemicals, biofuels, vegetable and animal oils, crude and asphalt, and refined petroleum products), but did not disclose to investors the specific products stored at IMTT's facilities, making it impossible for investors to independently determine how industrywide changes in commodities demand and usage might impact IMTT's liquid fuel storage business. ¶5.

In particular, the Company never disclosed to investors IMTT's dependence on heavy residual oils, and specifically No. 6 fuel oil, a heavy, viscous oil at the bottom of the distillation stream also known as "bunker" fuel. *Id.* It is the residual product that remains after the more valuable light oil products have been distilled from crude oil and for years, its use had been in decline. *Id.* Furthermore, environmental concerns spurred regulations that promised to further curb

use of such fuel oils. Development of alternative fuel sources, such as shale oil, also have made No. 6 fuel oil less cost-effective than alternatives. *Id.*

The decline in the usage of heavy residual oil products, including No. 6 fuel oil, presented a material risk to the Company, which Defendants concealed from investors. ¶7. In addition to the risk of losing business and falling IMTT utilization rates, such widespread changes in the use of No. 6 fuel oil required Macquarie to repurpose its storage tanks to accommodate other commodities. However, the Company downplayed its exposure to fluctuations in the use of petroleum products, assuring investors that IMTT had "no commodity exposure directly" because it "simply provides access to storage capacity." *Id.*

Macquarie also falsely assured investors regarding the sustainability of the Company's historically high dividend. Macquarie has for years been known as a high dividend-paying stock. ¶8. At the close of 2017, the Company's annualized dividend yield exceeded 15%. As late as December 2017, Macquarie executives described the Company's dividend as "sacrosanct." *Id.*

On February 21, 2018, after the close of trading, Macquarie surprised the market by announcing disappointing fourth quarter earnings of $0.43 per share, well short of analysts' estimate of $0.51 per share, and that the Company would be slashing its dividend by 31%. ¶9. Macquarie blamed its poor performance on the declining use of heavy residual oil products, in particular, declining demand and prices for No. 6 fuel oil. In response to this news, Macquarie's stock price fell from $63.62 per share on February 21, 2018, to $37.41 per share on February 22, 2018. *Id.*

As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Macquarie's stock, Plaintiff and other Class members have suffered significant losses and damages. ¶10.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation." (quoting *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999). Consolidation is particularly appropriate in securities class action litigation such as this. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460, at *4 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstifung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) (same). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements. *See, e.g.*, *Weisz v. Calpine Corp.*, No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831, at *7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions).

The Related Actions pending before this Court present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. Each names Macquarie and certain of its officers and/or directors as defendants. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all Related Actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

## II.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.  The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

*First,* the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall cause to be published in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by a purported class member in response to the notice and appoint as lead plaintiff the plaintiff that the court determines to be "most capable

of adequately representing the interests of class members." The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)  has either filed the complaint or made a motion in response to a notice;
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and sustained, to the best of his knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the consolidated action.

### B.  Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because he satisfies all of the requirements of the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class and satisfies the typicality and adequacy requirements of Rule 23.

### 1.  **Movant Filed a Timely Motion**

On April 24, 2018, which was within twenty (20) days of the filing of the first-filed complaint as required by 15 U.S.C. § 78u-4(a)(3)(A)(i), plaintiff in the *Riviera Beach* Action published notice of that action in *PRNewswire*, a widely circulated national business-oriented wire service. *See* Hopkins Decl., Ex. C; *see also Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (considering filing a notice in *PR Newswire* to be sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on June 25, 2018. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.  **Movant Has the Largest Financial Interest in the Relief Sought By the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Hopkins Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley,* 272 F.R.D. 126, 127 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, the Second Circuit, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss v. Friedman, Billings, Ramsey Group, Inc.,* 05-cv-4617 (RJH),

2006 U.S. Dist. LEXIS 3028, *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

Within the Class Period, Movant purchased Macquarie securities in reliance upon the materially false and misleading statements issued by the Defendants, and was injured thereby. Movant suffered substantial losses of approximately $245,070.42 as a result of the Defendants' alleged fraudulent statements. *See* Hopkins Decl., Ex. B. Movant, thus, has a significant financial interest in the outcome of this case. To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.   Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative

party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 49 (S.D.N.Y.) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.

### (i)     Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992). "However, the claims of the class representative need not be identical to those of all members of the class." *Id.; In re Orion Sec. Litig*., No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as

similarity of legal theory may control even in the face of differences of fact."). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete, nor conflict, with the claims of the other Class members. *See Richman v Goldman Sachs Grp*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.") (quotations omitted). Movant, like the other members of the Class, acquired Macquarie securities during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses resulted from the Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Reimer v. Ambac Fin. Group, Inc.,* No. 0-Civ.-411 (NRB), 2008 U.S. Dist. LEXIS 38729, *12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."). Additionally, Movant is not subject to any unique defenses and there is no evidence of any conflicts between Movant and the other members of the Class.

Movant therefore satisfies the required *prima facie* showing of the typicality and adequacy requirements of Rule 23 for purposes of this Motion.

### (ii)      Movant Will Fairly and Adequately Protect the Interests of the Class

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class." Adequate representation will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Secs. Litig.*, No. 09-Civ.-1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).

Movant has met both of the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative class. Not only is there no evidence of conflict between Movant's interests and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the consolidated action based on the large financial losses he suffered as a result of the wrongful conduct alleged therein. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action.").

Indeed Movant has already taken significant steps demonstrating that he recognizes and will protect the interests of the Class, including: (1) executing certifications detailing his Class Period transactions and expressing his willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; and (3) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud. Therefore, Movant will prosecute the consolidated action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is the presumptive lead plaintiff in accordance with § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this consolidated action.

### III.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class.

As set forth in the accompanying firm résumé (Hopkins Decl. Ex. D), Levi & Korsinsky is a highly accomplished firm and currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million dollar recoveries for investors. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these, and are well-qualified to represent the Class. Thus, this Court may be assured

that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Movant as Lead Plaintiff on behalf the Class; (3) approve Movant's selection of counsel, Levi & Korsinsky, as Lead Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: June 25, 2018                    Respectfully Submitted,

**LEVI & KORSINSKY LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

*Attorneys for Movant and [Proposed] Lead Counsel for the Class*

14