UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | : : : : : | Civil Action No. 1:18-cv-03608-VSB <br><br> CLASS ACTION |
| Plaintiff, | : : | |
| vs. | : : | |
| MACQUARIE INFRASTRUCTURE CORPORATION, JAMES HOOKE, JAY DAVIS, LIAM STEWART and RICHARD D. COURTNEY, | : : : : : | |
| Defendants. | : : | |
| DANIEL FAJARDO, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 1:18-cv-03744-VSB <br><br> CLASS ACTION |
| Plaintiff, | : : | |
| vs. | : : | |
| MACQUARIE INFRASTRUCTURE CORPORATION, JAMES HOOKE, JAY DAVIS, LIAM STEWART and RICHARD D. COURTNEY, | : : : : : | |
| Defendants. | : : | |

MEMORANDUM OF LAW IN SUPPORT OF MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF MICHIGAN'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

1445740_1

## I. INTRODUCTION

Presently pending before this Court are two related securities class action lawsuits (the "Related Actions") brought on behalf of investors who purchased or otherwise acquired Macquarie Infrastructure Corporation's ("Macquarie" or the "Company") securities between February 22, 2016 and February 21, 2018, inclusive (the "Class Period"), against the Company and certain of its current and former officers for alleged violations of §10(b) and §20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4, *et seq.*) and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).[1]

Proposed lead plaintiff Municipal Employees' Retirement System of Michigan ("MERS") hereby moves this Court for an order: (i) consolidating the Related Actions pursuant to Federal Rule of Civil Procedure 42; (ii) appointing MERS as Lead Plaintiff; and (iii) approving MERS's selection of Robbins Geller Rudman & Dowd LLP to serve as Lead Counsel.  MERS' motion is made on the grounds that the Related Actions involve common legal and factual questions, rendering consolidation appropriate under Rule 42.  Further, MERS is the most adequate plaintiff, as defined by the PSLRA, because it possesses a significant financial interest in the Related Actions, and it otherwise satisfies the Rule 23 requirements in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

Accordingly, MERS's motion should be granted.

---

[1] The Related Actions are *City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corporation*, No. 1:18-cv-03608, and *Fajardo v. Macquarie Infrastructure Corporation*, No. 1:18-cv-03744.

## II.     FACTUAL BACKGROUND

Founded in 2004, Macquarie owns, operates, and invests in a portfolio of infrastructure and infrastructure-like businesses consisting of bulk liquid terminals, airport services, gas processing and distribution, and a portfolio of contracted power and energy investments. Macquarie's most important segment is its International-Matex Tank Terminals ("IMTT") business, which provides bulk liquid storage and handling services at 12 marine terminals in the United States and Canada. In 2017, Macquarie's IMTT business constituted over 30% of the Company's revenues and approximately 70% of its net income. Macquarie is headquartered in New York, New York, and its stock traded in an efficient market on the New York Stock Exchange throughout the Class Period under the ticker symbol MIC.

The complaints allege that throughout the Class Period, defendants made materially false and misleading statements and/or failed to disclose that: (i) IMTT's performance and storage utilization rates were at risk due to the declining demand and pricing for heavy residual oils like No. 6 fuel oil; (ii) IMTT relied significantly on demand for storage of No. 6 fuel oil and other heavy residual fuel oils; (iii) Macquarie needed to undertake significant capital expenditures to repurpose IMTT storage tanks to accommodate alternative products; (iv) Macquarie's historically high dividend was neither safe nor sustainable; and (v) as a result of the foregoing, Macquarie's stock traded at artificially inflated prices during the Class Period.

Throughout the Class Period, defendants allegedly misled investors by emphasizing IMTT's "very strong" and "steady as she goes" performance with "high" and "very, very stable" utilization rates when they knew or recklessly disregarded the opposite to be true. ECF No. 1 at ¶3. The decline in the usage of heavy residual oil products, including No. 6 fuel oil, presented a material risk to the Company, which Defendants concealed from investors. In addition to the risk of losing

business and falling IMTT utilization rates, such widespread changes in the use of No. 6 fuel oil required Macquarie to repurpose its storage tanks to accommodate other commodities. However, the Company downplayed its exposure to fluctuations in the use of petroleum products, assuring investors that IMTT had "no commodity exposure directly" because it "simply provides access to storage capacity." *Id.* at ¶7. Defendants also allegedly misled investors about the sustainability of Macquarie's dividend, which was not, in fact, sustainable given the undisclosed IMTT exposure to No. 6 fuel oil. *Id.* at ¶8.

Despite defendants' allegedly false and misleading assurances, Macquarie stunned investors on February 21, 2018 after the market closed when it announced that the Company was slashing its dividend by 31%. During a conference call with investors the next day, Macquarie revealed that the Company lost "half a dozen" IMTT contracts due to "the long-term structural decline in" the No. 6 fuel oil market – a market investors had no idea IMTT (and Macquarie) was exposed to. *Id.* at ¶¶9, 41-42. Macquarie also disclosed that the Company needed to undertake significant capital expenditures to repurpose IMTT's storage tanks to handle other bulk liquids. In response to this news, Macquarie's stock price declined over 41% to $37.41 per share on February 22, 2018.

As a result of defendants' allegedly false and misleading statements, Macquarie's stock price was artificially inflated throughout the Class Period. When the truth about defendants' business, operational, and compliance policies was revealed to the market, the artificial inflation began to be removed from Macquarie's stock price, causing a decline in market value which inflicted significant losses and damages upon MERS and the putative class.

**III.     ARGUMENT**

    **A.     The Related Actions Should Be Consolidated**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). "Under Federal Rule of Civil Procedure 42(a), when separate actions before a court involve a common question of law or fact, a court is empowered to 'consolidate the actions.'" *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *3 (S.D.N.Y. Mar. 13, 2018).[2] "In securities actions in particular, district courts consolidate cases when complaints are based on the same set of public statements and disclosures and there are common questions of law or fact." *Id.* (consolidating related securities cases).

The Related Actions present identical factual and legal issues, raise identical claims, and name identical defendants.  Because the Related Actions pending before this Court are based on the same facts and involve the same subject matter, the same discovery will be relevant to all lawsuits. Thus, consolidation is appropriate here.  *See id.*

    **B.     MERS Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff**

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, "[n]ot later than 20 days" after the first complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60

---

[2]   Unless otherwise noted, all emphasis is added and citations are omitted.

- 4 -

days after the date on which the notice is published, any member of the purported plaintiff class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i).

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

    (aa)    has either filed the complaint or made a motion in response to a notice . . .;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *Micholle*, 2018 WL 1307285, at *4. MERS meets each of these requirements and should therefore be appointed Lead Plaintiff.

### 1. MERS's Motion Is Timely

On April 24, 2018, notice of the first-filed complaint was published on *PRNewswire* and advised class members of the pendency of action, the alleged claims, the class definition, and the option of moving the Court to be appointed as lead plaintiff by June 25, 2018. *See* Declaration of David A. Rosenfeld in Support of Municipal Employees' Retirement System of Michigan's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("Rosenfeld Decl."), Ex. A. Thus, MERS filed within the applicable deadline and its motion should be considered for lead plaintiff appointment.

### 2. MERS Possesses the Largest Financial Interest

During the Class Period, MERS purchased 119,663 shares of Macquarie stock and suffered approximately $4.28 million in losses due to defendants' alleged misconduct. *See* Rosenfeld Decl.,

Exs. B, C.³  To the best of its counsel's knowledge, no other movant claims a larger financial interest than MERS.  Therefore, MERS satisfies the PSLRA's "largest financial interest" requirement.

### 3. MERS Satisfies the Rule 23 Typicality and Adequacy Requirements

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  As this Court has previously recognized, the "Rule 23 analysis in the context of appointment of lead plaintiff 'need not be as complete as would a similar determination for the purpose of a class certification.'"  *Micholle*, 2018 WL 1307285, at *6.  "The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements."  *Id.*

"With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'"  *Id.*  "While the claim need not be identical, it must be substantially similar to the other members' claims."  *Id.*  "The adequacy requirement is satisfied where the proposed lead plaintiff 'fairly and adequately protect[s] the interests of the class.'"  *Id.*  "The presumptive lead plaintiff meets this requirement when this plaintiff: (1) has no conflict of interest with the other members of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question."  *Id.*  "Additionally, courts have a preference for appointing institutional investors as lead plaintiffs."  *Id*.

Here, MERS's claims are typical because, like all members of the putative class, it purchased Macquarie stock during the Class Period at prices artificially inflated by defendants' materially false

---

³  MERS's losses are the same whether calculated pursuant to the last in, first out ("LIFO") or first in, first out ("FIFO") accounting methods.

- 6 -

1445740_1

and misleading statements and suffered damages when the truth was revealed. MERS's claims therefore arise from the same course of events as all class members and will require similar (if not identical) legal arguments to prove defendants' liability.

MERS is also an adequate representative for the proposed class. Its substantial financial interest in the relief sought by the class demonstrates that MERS possesses the requisite incentive to vigorously pursue the putative class's claims. Moreover, as a sophisticated institutional investor, MERS has the resources and experience to ensure diligent and competent advocacy for the benefit of the putative class members, and is the type of investor Congress intended would lead securities class actions. *See id*. And, MERS has selected highly experienced counsel committed to zealously and efficiently prosecuting the Related Actions to a successful conclusion.

Because MERS is the presumptive "most adequate plaintiff" under the PSLRA, and no competing movant can rebut that presumption, it should be appointed Lead Plaintiff.

### C. MERS's Selection of Counsel Should Be Approved

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Micholle*, 2018 WL 1307285, at *10. MERS has selected Robbins Geller to serve as Lead Counsel in this case.

Robbins Geller, a 200-attorney firm with offices nationwide and in New York, regularly practices complex securities litigation. Rosenfeld Decl., Ex. D. Courts throughout the country, including this Court, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *Micholle*, 2018 WL 1307285, at *10 (approving institutional investor's

- 7 -

1445740_1

selection of Robbins Geller as lead counsel in securities case and finding that the "attorneys at [Robbins] Geller Rudman & Dowd LLP have substantial experience with securities litigation and securities class actions").

Thus, the Court can be assured that by approving MERS's selection of Robbins Geller as lead counsel, the putative class will receive the highest caliber of representation.

## IV. CONCLUSION

The Related Actions should be consolidated.  In addition, MERS has satisfied each of the PSLRA's requirements for appointment as lead plaintiff and approval of its selection of counsel. Accordingly, MERS respectfully requests that the Court grant its motion.

DATED:  June 25, 2018                     Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD


                          s/ David A. Rosenfeld
                        DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct. Executed on June 25, 2018.

    s/ David A. Rosenfeld
    DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:  drosenfeld@rgrdlaw.com

1445740_1

# Mailing Information for a Case 1:18-cv-03608-VSB City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corporation et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Avi Josefson**
  avi@blbglaw.com,errol.hall@blbglaw.com,scott.foglietta@blbglaw.com,jesse.axman@blbglaw.com,ross@blbglaw.com,Matthew.Mahady@blbglaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`