UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>                Plaintiff,<br><br>                v.<br><br>MACQUARIE INFRASTRUCTURE CORPORATION, JAMES HOOKE, JAY DAVIS, LIAM STEWART, and RICHARD D. COURTNEY,<br><br>                Defendants. | Civil Action No. 1:18-cv-03608-VSB<br><br>CLASS ACTION |
| DANIEL FAJARDO, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>                v.<br><br>MACQUARIE INFRASTRUCTURE CORPORATION, JAMES HOOKE, JAY DAVIS, LIAM STEWART, and RICHARD D. COURTNEY,<br><br>                Defendants. | Civil Action No. 1:18-cv-03744-VSB<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOAB PARTNERS, L.P.'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF,
APPROVAL OF ITS SELECTION OF LEAD COUNSEL,
AND CONSOLIDATION OF RELATED ACTIONS**

## TABLE OF CONTENTS

                                                                                                                 **Page**

TABLE OF AUTHORITIES .................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................... 1

SUMMARY OF THE PENDING ACTION ........................................................................................ 3

ARGUMENT ............................................................................................................................................ 5

       A.       Moab Is Entitled To Appointment As Lead Plaintiff ............................................... 5

               1.       Moab Has The Largest Financial Interest In The Relief Sought By The Class .......................................................................................................................... 6

               2.       Moab Otherwise Satisfies Rule 23's Requirements ..................................... 6

       B.       Moab's Selection Of Lead Counsel Should Be Approved ..................................... 8

       C.       Consolidation of the Related Actions Is Appropriate ............................................ 9

CONCLUSION ....................................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                           **PAGE(S)**

*Chilton v. Chiumento Grp.*,
  365 F. App'x 298 (2d Cir. 2010) ...................................................................................6

*Faig v. BioScrip, Inc.*,
  No. 13 Civ. 06922(AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) .............................7, 9

*Glauser v. EVCI Career Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................................8

*Stitt v. On Deck Capital, Inc.*,
  No. 15 Civ. 6126 (AT), 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ......................................6

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  No. 14 Civ. 2814(ER), 2015 WL 1499657 (S.D.N.Y. Mar. 27, 2015) ....................................8

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A) ..........................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(i) .....................................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................1, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..............................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..............................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(v) ......................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) ...............................................................................................7

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ............................2, 7

Moab Partners, L.P. ("Moab") respectfully submits this memorandum of law in support of its motion for: (1) appointment as Lead Plaintiff under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class; (3) consolidation of all related securities class actions under Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) any further relief that the Court may deem just and proper.

## PRELIMINARY STATEMENT

On April 23, 2018, Plaintiff City Of Riviera Beach General Employees Retirement System, through its counsel, Bernstein Litowitz, filed the first of the two above-captioned actions (the "Related Actions") alleging that from February 22, 2016 through February 21, 2018, inclusive (the "Class Period"), Macquarie Infrastructure Corporation ("Macquarie" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5). Macquarie investors, including Moab, incurred significant losses when the Company announced that it was slashing its dividend by 31%, citing a previously undisclosed, material adverse trend in its most important business unit.

Under the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and whether that movant has made a prima facie showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I). For the reasons discussed below, Moab respectfully submits that it is the "most adequate plaintiff" by virtue of, among other things, the approximately $11.5 million in losses as calculated under a last-in, first-out ("LIFO") basis, and the approximately $14.8 million in losses as calculated under a first-in, first-out ("FIFO") basis, which it incurred on its purchases of 501,602 shares of Macquarie stock during the Class Period.[1] Moab also satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the Class and because it will fairly and adequately represent the interests of the Class.

Indeed, Moab is a paradigmatic Lead Plaintiff under the PSLRA because it is a sophisticated institutional investor with a real financial interest in this litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Further, Moab understands the Lead Plaintiff's obligations under the PSLRA and is willing and able to undertake the Lead Plaintiff's responsibility to guarantee the vigorous prosecution of this action. To that end, Moab has selected Bernstein Litowitz, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, Moab respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

---

[1] Moab's PSLRA-required Certification is provided as Exhibit A to the Declaration of Avi Josefson in Support of Moab Partners, L.P.'s Motion for Appointment as Lead Plaintiff, Approval of Its Selection of Lead Counsel, and Consolidation of Related Actions ("Josefson Decl."). In addition, charts providing calculations of Moab's transactions and financial interest in Macquarie securities are provided as Exhibit B to the Josefson Decl.

## SUMMARY OF THE PENDING ACTIONS

This securities class action arises from Defendants' misrepresentations and material omissions concerning Macquarie's International-Matex Tank Terminals ("IMTT") business and the sustainability of the Company's dividend to shareholders. *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 1:18-cv-03608-VSB, Complaint for Violations of the Federal Securities Laws ¶ 2 (S.D.N.Y. filed Apr. 23, 2018) ("*Riviera Beach* Complaint"). IMTT, which provides bulk liquid storage and handling services at 12 marine terminals in the United States and Canada, is Macquarie's most important business segment. *Id.*

Throughout the Class Period, the Company emphasized IMTT's "very strong" performance and "high" utilization rates. *Id.* ¶ 3. During multiple investor conferences and earnings conference calls during the Class Period, the Company represented that the IMTT business experienced stable, "steady as she goes" performance, and "very, very stable" utilization rates. *Id.* ¶¶ 3, 28–29, 31–36. Defendants specifically touted IMTT's consistently high utilization rates, which they claimed averaged 94% over the past 10 years. *Id.* ¶ 3. Macquarie executives further represented to investors that any declines in IMTT's storage utilization were temporary and due only to routine maintenance, such as tank cleaning and inspection. *Id.* ¶ 4.

Significantly, the Company disclosed to investors only the categories of commodities serviced by IMTT (such as chemicals, biofuels, vegetable and animal oils, crude and asphalt, and refined petroleum products), but did not disclose to investors the specific products stored at IMTT's facilities. *Id.* ¶¶ 5, 22, 29. This made it impossible for investors to independently determine how industrywide changes in commodities demand and usage might impact IMTT's liquid fuel storage business. *Id.* In particular, the Company never disclosed to investors IMTT's dependence on heavy residual oils, and specifically No. 6 fuel oil, also known as "bunker" fuel. *Id.*

No. 6 fuel oil is a heavy, viscous oil at the bottom of the distillation stream; it is the residual

3

product that remains after the more valuable light oil products have been distilled from crude oil. *Id.* ¶ 6. For years before the start of the Class Period, use of No. 6 fuel oil had been in decline. *Id.* Environmental concerns spurred regulations that promised to further curb use of such fuel oils. *Id.* Development of alternative fuel sources, such as shale oil, also have made No. 6 fuel oil less cost-effective than alternatives. *Id.*

The decline in the usage of heavy residual oil products, including No. 6 fuel oil, presented a material risk to the Company, which Defendants concealed from investors. *Id.* ¶ 7. In addition to the risk of losing business and falling IMTT utilization rates, such widespread changes in the use of No. 6 fuel oil required Macquarie to repurpose its storage tanks to accommodate other commodities. *Id.* However, the Company downplayed its exposure to fluctuations in the use of petroleum products, assuring investors that IMTT had "no commodity exposure directly" because it "simply provides access to storage capacity." *Id.* ¶¶ 7, 33.

Macquarie also falsely assured investors regarding the sustainability of the Company's historically high dividend. *Id.* ¶ 8. Macquarie has for years been known as a high dividend-paying stock. *Id.* For example, in early 2017, analysts named Macquarie a "Top Dividend Stock," noting the Company's strong quarterly dividend history, diversified business operations, and favorable long-term, multi-year growth rates. *Id.* Indeed, over the past five years Macquarie has consistently paid quarterly dividends of more than 5%, and, throughout the Class Period has paid dividends of at least 6.7% or more. *Id.* At the close of 2017, the Company's annualized dividend yield exceeded 15%. *Id.* As late as December 2017, Macquarie executives described the Company's dividend as "sacrosanct." *Id.*

On February 21, 2018, after the close of trading, Macquarie surprised investors by announcing disappointing fourth quarter earnings of $0.43 per share, well short of analysts'

estimate of $0.51 per share, and that the Company would be slashing its dividend by 31%. *Id.* ¶¶ 9, 41. Macquarie blamed its poor performance on the declining use of heavy residual oil products, in particular, declining demand and prices for No. 6 fuel oil. *Id.* In response to this news, Macquarie's stock price fell from $63.62 per share on February 21, 2018, to $37.41 per share on February 22, 2018. *Id.* ¶¶ 9, 43.

As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Macquarie's stock, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On April 23, 2018, Bernstein Litowitz, on behalf of Plaintiff City of Riviera Beach General Employees Retirement System, filed the first of the Related Actions. *See Riviera Beach* Complaint, ECF No. 1. The next day, as required by the PSLRA, Bernstein Litowitz published a notice on PR Newswire, which alerted investors to the pendency of *Riviera Beach* and notified them that June 25, 2018 was the deadline to seek Lead Plaintiff status. *See* Josefson Decl., Ex. C. Accordingly, Moab has timely moved for appointment as Lead Plaintiff through the filing of this motion.

### A.     Moab Is Entitled To Appointment As Lead Plaintiff

Moab respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a presumption for selecting a Lead Plaintiff that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the

class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).

### 1. Moab Has The Largest Financial Interest In The Relief Sought By The Class

Moab should be appointed Lead Plaintiff because it believes that it has the largest financial interest of any movant in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As demonstrated in the accompanying papers, Moab sustained total losses of approximately $11.5 million as calculated under LIFO, and approximately $14.8 million as calculated under FIFO, from its Class Period purchases of 501,602 shares of Macquarie stock. *See* Josefson Decl., Exs. A & B. To the best of Moab's knowledge, no other applicant seeking Lead Plaintiff appointment has a larger financial interest in this litigation. Accordingly, Moab has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 2. Moab Otherwise Satisfies Rule 23's Requirements

In addition to possessing the largest financial interest in the outcome of this litigation, Moab otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make "a preliminary showing" that it satisfies Rule 23's typicality and adequacy requirements. *Stitt v. On Deck Capital, Inc.*, No. 15 Civ. 6126 (AT), 2016 WL 889535, at *2 (S.D.N.Y. Feb. 17, 2016) (citation omitted). Here, Moab satisfies both requirements.

First, Moab's claims are typical of the claims of other purchasers of Macquarie securities. Typicality is satisfied when a movant's claims "arise from the same course of events, and the other class members make similar legal arguments to prove liability." *Id.* Here, Moab's and all other Class members' claims arise from the same course of events, and their legal arguments to prove

Defendants' liability are substantially identical. Like all other Class members, Moab: (1) purchased Macquarie securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and (3) was damaged as a result. *See Faig v. BioScrip, Inc.*, No. 13 Civ. 06922(AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (finding typicality satisfied when movant alleged "that it suffered financial losses due to material misstatements made by [the company] during the class period"). Thus, Moab is a typical Class representative here.

Second, Moab likewise satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class' interests to be fairly and adequately represented, the Lead Plaintiff must not have interests that are antagonistic to the Class, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is qualified to represent the interests of the Class. *See BioScrip*, 2013 WL 6705045, at *3. Moab satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims. Moab's interests are perfectly aligned with those of the other Class members and are not antagonistic to them in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Moab and other Class members.

Moreover, Moab is the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class

7

actions"); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one") (citation omitted).

Finally, Moab has demonstrated its adequacy through its selection of Bernstein Litowitz as Lead Counsel to represent the Class in this action. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class actions effectively.

**B.     Moab's Selection Of Lead Counsel Should Be Approved**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 14 Civ. 2814(ER), 2015 WL 1499657, at *11 (S.D.N.Y. Mar. 27, 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.") (citation omitted).

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Résumé, Josefson Decl., Ex. D. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. More recently, Bernstein Litowitz secured a $2.43 billion recovery for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.); a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151-SRC (D.N.J.); and a $730 million recovery for the class in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.).

Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Nortel*

8

*Networks Corp. Sec. Litig.*, No. 05-md-1659-LAP (S.D.N.Y.) (recovering $1.3 billion for investors); *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09-cv-6351-RJS (S.D.N.Y) (recovering $627 million for investors); *In re Lehman Brothers Equity/Debt Sec. Litig.*, No. 09-md-2017-LAK (S.D.N.Y) (recovering $615 million for investors); and *In re Refco, Inc. Sec. Litig.*, No. 05-cv-8626-JSR (S.D.N.Y.) (recovering $367 million for investors).

Bernstein Litowitz has also already taken steps to protect the interests of the class by, among other things, initiating this action by filing the first complaint asserting these claims against Defendants. Thus, the Court may be assured that granting this motion will provide the Class with the highest caliber of legal representation. Accordingly, the Court should approve Moab's selection of Bernstein Litowitz as Lead Counsel for the Class.

### C. Consolidation of the Related Actions Is Appropriate

Two related securities fraud class actions were filed in this District against Defendants:

| Case | Civil No. | Date Filed |
|---|---|---|
| *City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corporation, et al.* | 18-cv-3608 | 4/23/18 |
| *Fajardo v. Macquarie Infrastructure Corporation, et al.* | 18-cv-3744 | 4/27/18 |

These actions present virtually identical factual and legal issues because they both arise out of the same alleged material misstatements and omissions regarding the strength of the Company's core IMTT business. Accordingly, consolidation of the *Fajardo* action into the *Riviera Beach* action is appropriate under Rule 42(a). *See, e.g.*, *BioScrip*, 2013 WL 6705045, at *1 (consolidating actions where both cases allege defendant "unlawfully and artificially inflated the price of its securities").

9

## CONCLUSION

For the reasons discussed above, Moab respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of Bernstein Litowitz as Lead Counsel for the Class; (3) consolidate the Related Actions under Rule 42(a); and (4) grant any further relief that the Court may deem just and proper.

Dated:  June 25, 2018                                                  Respectfully submitted,

/s/ Avi Josefson
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Moab Partners, L.P. and Proposed Lead Counsel for the Class*

Lori Marks-Esterman
John G. Moon
**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
Telephone: (212) 451-2300
Facsimile: (212) 451-2222
lmarksesterman@olshanlaw.com
jmoon@olshanlaw.com

*Additional Counsel for Proposed Lead Plaintiff Moab Partners, L.P*