UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                     :

CITY OF RIVIERA BEACH GENERAL      :
EMPLOYEES RETIREMENT SYSTEM, on :
behalf of itself and all others similarly situated,  :
                                                                     :                      18-CV-3608 (VSB)
                              Plaintiff,        :
                                                                      :                     **OPINION & ORDER**
                    - against -           :

MACQUARIE INFRASTRUCTURE        :
CORPORATION, et al.,                  :

                                           Defendants.   :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/30/2019

Appearances:

Avi Josefson
Bernstein Litowitz Berger & Grossmann LLP
New York, New York
*Counsel for Plaintiff and Movant Moab Partners, L.P.*

Shannon Lee Hopkins
Levi & Korsinsky, LLP
New York, New York
*Counsel for Movant Paul Arthur Reimer*

Kim Elaine Miller
Kahn Swick & Foti, LLC
Madisonville, Louisiana
*Counsel for Movant James Goetz*

Robert N. Kaplan
Kaplan Fox & Kilsheimer LLP
New York, New York
*Counsel for Movant The Selz Funds*

David Avi Rosenfeld
Robbins Geller Rudman & Dowd LLP
Melville, New York
*Counsel for Movant Municipal Employees' Retirement System of Michigan*

Jeremy Alan Lieberman
Pomerantz LLP
New York, New York
*Counsel for Movant Thomas J. Stone Trust*

John Erik Schreiber
Richard Walter Reinthaler
Winston & Strawn LLP
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Plaintiff City of Riviera Beach General Employees Retirement System and Plaintiff Daniel Fajardo each filed separate securities fraud class action lawsuits against Macquarie Infrastructure Corporation ("Macquarie" or the "Company") and several of its officers and directors, alleging that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated pursuant to the Exchange Act.[1]  (Riviera Beach Compl. ¶ 1.)[2]

Before me are motions from six movants seeking (1) consolidation of the Riviera Beach Action and the Fajardo Action, (2) appointment of lead plaintiff, and (3) approval of lead counsel.  Because the Related Actions set forth substantially identical questions of law and fact, movants' motions to consolidate are GRANTED.  Because movant Moab Partners, L.P. ("Moab") has a large financial interest in the litigation, appears to fulfill the typicality and adequacy requirements of Federal Rule of Civil Procedure 23 at this stage of the litigation, and

---

[1] The parties seek to consolidate the following actions: *City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corporation, Inc., et al.*, No. 18-cv-3608-VSB (the "Riviera Beach Action") and *Daniel Fajardo v. Macquarie Infrastructure Corporation, Inc., et al.*, 18-cv-3744-VSB (the "Fajardo Action" and, together with the Riviera Beach Action, the "Related Actions").  I accepted the Fajardo Action as related to the Riviera Beach Action on September 11, 2018.

[2] "Riviera Beach Compl." refers to Plaintiff's Complaint for Violations of the Federal Securities Laws, filed in this action on April 23, 2018.  (Doc. 1.)

has chosen counsel with substantial experience in securities litigation and securities class actions, Moab's motion to be appointed lead plaintiff and for approval of its selection of lead counsel is GRANTED. The remaining movants' motions for appointment as lead plaintiff and for approval of lead counsel are DENIED.

I. **Factual Background**[3]

Macquarie owns and operates a portfolio of infrastructure and infrastructure-like businesses that provide services to businesses, government agencies, and individuals in the United States. (Riviera Beach Compl. ¶ 14.) Its portfolio consists of four segments, including International-Matex Tank Terminals ("IMTT"), which is the largest of the four segments, generating nearly half of Macquarie's earnings. (*Id.* ¶ 21.)

The Related Actions are class actions brought on behalf of persons and/or entities who purchased or acquired Macquarie common stock between February 22, 2016 and February 21, 2018 (the "Class Period"), seeking to pursue remedies under federal securities laws. Plaintiff alleges that during the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects. (*See id.* ¶¶ 22–23.) Specifically, Defendants purportedly made false and/or misleading statements and/or failed to disclose the truth regarding the impact on IMTT's financial and operational positions from changes in the heavy and residual oil market. (*Id.* ¶¶ 24–40.) Defendants also allegedly misled investors regarding the Company's continuing ability to yield high dividends. (*Id.* ¶¶ 36–40.)

On February 21, 2018, Macquarie "surprised the market by announcing disappointing

---

[3] The facts in this Section are recited for background only, and are not intended to and should not be viewed as findings of fact.

3

fourth quarter earnings . . . and that the Company would be slashing its dividend." (*Id.* ¶ 41.) These earnings were well short of the prior estimates by analysts. "The Company cited as the main reason for its poor performance the loss of 'half a dozen' IMTT contracts at its flagship Louisiana storage facility due to a decline in the No. 6 fuel oil segment." (*Id.*) This news caused Macquarie's stock price to fall from $63.62 per share at the close of trading on February 21, 2018 to $37.41 per share at the close of trading on February 22, 2018—a 41% decline in value on a volume of 27.64 million shares traded. (*Id.* ¶ 43.) As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Macquarie's stock, Plaintiff and other class members claim that they have suffered significant losses and damages. (*Id.* ¶ 10.)

## II. **Procedural History**

Since the Complaint was filed, six plaintiffs and plaintiff groups have filed motions requesting consolidation of the Related Actions, appointment of lead plaintiff, and approval of lead counsel. (*See* Docs. 20, 23, 26, 29, 32, 34.)[4] Specifically, with regard to the appointment of lead plaintiff and approval of lead counsel: (1) Paul Arthur Reimer moves to appoint himself as lead plaintiff and for approval of Levi & Korsinksky, LLP as lead counsel, (Doc. 20); (2) James Goetz moves to appoint himself as lead plaintiff and for approval of Kahn Swick & Foti, LLC as lead counsel, (Doc. 23); (3) Karnak Partners, L.P., the Selz Family 2011 Trust, the Bernard Selz Revocable Trust, the Bernard T. Selz 2008 15-Year Charitable Lead Annuity Trust, the Bernard T. Selz 2008 20-Year Charitable Lead Annuity Trust, Selz Capital LLC, and the Lisa Pagliaro Selz Revocable Trust (the "Selz Funds") move to appoint themselves as lead plaintiffs and for approval of Cera LLP as lead counsel, (Doc. 26); (4) Municipal Employees' Retirement System

---

[4] All references to documents in this Section are to the filings made in the Riviera Beach Action, the first-filed of the Related Actions.

4

of Michigan ("MERS") moves to appoint itself as lead plaintiff and for approval of Robbins Geller Rudman & Dowd LLP as lead counsel, (Doc. 29); (5) The Thomas J. Stone Trust (the "Stone Trust") moves to appoint itself as lead plaintiff and for approval of Pomerantz LLP as lead counsel, (Doc. 32); (6) Moab Partners, L.P. ("Moab") moves to appoint itself as lead plaintiff and for approval of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel, (Doc. 34).

In response to the above-mentioned motions for appointment of lead plaintiff and approval of lead counsel, Goetz and the Stone Trust withdrew their motions because they do not have the largest financial interest in this matter. (*See* Docs. 38, 41.) Reimer and the Selz Funds filed notices of non-opposition, acknowledging that they too do not possess the largest financial interest in this action. (*See* Docs. 39, 40.) On July 9, 2018, Goetz and MERS each filed an opposition to Moab's motion, (Docs. 41, 43), and Moab filed an opposition to MERS' motion, (Doc. 45). On July 16, 2018, Moab filed a reply in further support of its motion, (Doc. 46), and MERS filed a reply in further support of its motion, (Doc. 48). Defendants have not taken a position on the merits of these motions.

### III. Discussion

#### A. *Consolidation of the Related Actions*

##### 1. **Applicable Law**

Consolidation is a "valuable and important tool of judicial administration." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). Under Federal Rule of Civil Procedure 42(a), when separate actions before a court involve a common question of law or fact, a court is empowered to "consolidate the actions." Fed. R. Civ. P. 42(a)(2). Essentially, Rule 42 is "invoked to expedite trial and

eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted).

It is well-settled that Rule 42 gives a district court broad discretion to consolidate legal actions sua sponte. *Id.* Indeed, if judicial resources will be conserved thereby advancing judicial economy, a district court will generally consolidate actions. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation."); *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987) ("Considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." (internal quotation marks omitted)). Further, "consolidation should be considered when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Devlin*, 175 F.3d at 130 (emphasis and internal quotation marks omitted).

In securities actions in particular, district courts consolidate cases when complaints are based on the same set of public statements and disclosures and there are common questions of law or fact. *See Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992). Courts also consider whether consolidation would prejudice the defendants. *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004).

### 2. Application

Before me are motions from six plaintiffs and plaintiff groups requesting consolidation of the Related Actions. (*See* Docs. 20, 23, 26, 29, 32, 34.) Because the motions for consolidation are unopposed and because the actions are substantially similar, I find that consolidation of the Related Actions is warranted.

The Related Actions involve a similar set of plaintiffs and defendants—both are

securities class actions on behalf of all persons who purchased or otherwise acquired Macquarie's securities between February 22, 2016 and February 21, 2018, (Riviera Beach Compl. ¶ 1; Fajardo Compl. ¶ 1)[5], against Macquarie and certain of the Company's current and former executives, (Riviera Beach Compl. ¶¶ 14–19; Fajardo Compl. ¶¶ 13–19). Both complaints arise out of the same alleged material misstatements and omissions regarding the strength of the Company's core IMTT business, and the impact of changes in the heavy and residual oil market on those businesses. (*See generally* Riviera Beach Compl.; Fajardo Compl.) The two complaints also seek identical relief under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated pursuant to the Exchange Act. (Riviera Beach Compl. ¶¶ 56–66; Fajardo Compl. ¶¶ 57–66.) Therefore, these actions implicate the same questions of law, namely whether Macquarie and certain of its executives violated the Exchange Act and SEC Rule 10b-5 through making material misrepresentations regarding the Company's IMTT business and whether these misrepresentations caused injury to the respective plaintiffs.

Since the motions for consolidation of the Related Actions are unopposed, as well as the substantially similar nature of the Related Actions and the common questions of law and fact arising under the actions, movants' motions for consolidation are granted and the Related Actions are hereby consolidated.

      **B.** *Appointment of Lead Plaintiff*

          **1. Applicable Law**

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") establishes a procedure for the appointment of a lead plaintiff in "each private action . . . that is brought as a

---

[5] "Fajardo Complaint" refers to the Class Action Complaint filed on April 27, 2018 in the Fajardo Action. (Fajardo Action Doc. 1.)

plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, "[n]ot later than 20 days" after the first complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported class "of the pendency of the action, the claims asserted therein, and the purported class period" and "not later than 60 days after the date on which the notice is published, any member of the purported plaintiff class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, the PSLRA provides that a district court must "appoint as lead plaintiff the member or members . . . that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Pursuant to the PSLRA, courts must adopt a presumption that the most adequate plaintiff is the person or entity who (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (noting that adequacy is not met if the class representative is "subject to any 'unique defenses which threaten to become the focus of the litigation'" (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000))).

In determining which plaintiff has the greatest financial interest, courts consider four

factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). The magnitude of the loss is the most significant factor. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

A potential lead plaintiff must also "make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *In re eSpeed*, 232 F.R.D. at 102. The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of class certification." *Id.* The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008); *Kaplan*, 240 F.R.D. at 94. With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (internal quotation marks omitted); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998). While the claims need not be identical, they must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011). In considering the adequacy of a proposed lead plaintiff, a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. *Reitan v. China Mobile Games & Entm't Grp. Ltd.*, 68 F.

Supp. 3d 390, 400 (S.D.N.Y. 2014).

### 2. Application

Before me are competing motions for appointment of lead plaintiff by movants MERS and Moab.[6] I find that Moab is the "most adequate" movant to serve as lead plaintiff under the PSLRA, and that the remaining movants have failed to rebut this presumption.

#### a. Moab is the Presumptive Lead Plaintiff

##### i. *All Movants Filed Timely Motions*

As an initial matter, all movants timely filed for appointment as lead plaintiff. The Riviera Beach Complaint was the first filed complaint on April 23, 2018. (*See generally* Riviera Beach Compl.) The next day, on April 24, 2018, notice of that complaint was published in PRNewswire, a widely-circulated national business-oriented wire service, fulfilling the PSLRA requirements set forth in 15 U.S.C. § 77z–1(a)(3)(A)(i). The notice advised class members of the pendency of the action, the alleged claims, the class definition, and the option of moving to be appointed as lead plaintiff by June 25, 2018. (*See* Rosenfeld Decl. Ex. A.)[7] Each movant moved for appointment as lead plaintiff on June 25, 2018, (*see* Docs. 20, 23, 26, 29, 32, 34), and thus timely filed within the sixty-day statutory requirement.

##### ii. *Comparing Financial Interests*

Movants Goetz and the Stone Trust have withdrawn their motions for lead plaintiff in recognition that they do not possess the largest financial interest in this matter. (*See* Docs. 38, 41.) Additionally, movants Reimer and the Selz Funds have filed notices of non-opposition

---

[6] As noted above, movants Reimer, Goetz, the Stone Trust, and the Selz Funds have either withdrawn their motions for lead plaintiff and/or acknowledged that they lack the largest financial interest in this case and thus do not oppose the competing motions of MERS and Moab. *See supra* Part II.

[7] "Rosenfeld Decl." refers to the Declaration of David A. Rosenfeld in Support of Municipal Employees' Retirement System of Michigan's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, filed on June 25, 2018. (Doc. 31.)

acknowledging that they too do not possess the largest financial interest, but stating that if the court were to determine that those entities with larger financial interests are inadequate to represent the class, they would be willing and able to serve as lead plaintiff. (*See* Docs. 39, 40.) Of the remaining motions filed by Moab and MERS, Moab has the larger financial interest.

Moab states that it purchased 501,602 shares of Macquarie stock during the Class Period and suffered approximately $11.5 million in losses as calculated under a last-in, first-out ("LIFO") basis, and approximately $14.8 million in losses as calculated under a first-in, first-out ("FIFO") basis.[8] (Moab Mem. 2.)[9] MERS claims that it purchased 119,663 shares of Macquarie stock and suffered approximately $4.28 million in losses due to Defendants' alleged misconduct (whether calculated pursuant to the LIFO or FIFO accounting methods). (MERS Mem. 5.)[10] Accordingly, I conclude—and the parties do not contest, (*see generally* Goetz Opp; MERS Opp.)—that Moab is the movant claiming the largest financial losses.[11]

### iii. *Satisfaction of Rule 23*

In addition to suffering the largest financial losses, Moab satisfies the typicality and

---

[8] LIFO and FIFO are methodologies employed for the purposes of loss calculation in a variety of legal circumstances. *See City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc*., 269 F.R.D. 291, 295 (S.D.N.Y. 2010). "In a FIFO analysis, the first stocks to be sold are assumed to be the stocks that were acquired first, often outside of the class period. Because sales matched with pre-class period purchases are not included in the calculation of class period losses, any gains or losses from those most recent sales would not be included in the total loss. LIFO . . . assumes that the last stocks to be sold are the stocks purchased most recently prior to that sale . . . . While the PSLRA does not address which method of loss calculation should be employed, courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff." *Id.* Under either method, Moab apparently suffered the largest loss.

[9] "Moab Mem." refers to the Memorandum of Law in Support of Moab Partners, L.P.'s Motion for Appointment as Lead Plaintiff, Approval of its Selection of Lead Counsel, and Consolidation of Related Actions, filed on June 25, 2018. (Doc. 36.)

[10] "MERS Mem." refers to the Memorandum of Law in Support of Municipal Employees' Retirement System of Michigan's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel, filed on June 25, 2018. (Doc. 30.)

[11] "Goetz Opp." refers to James Goetz's Withdrawal of his Motion for Appointment as Lead Plaintiff and Response to Moab Partners, L.P.'s Motion, filed on July 9, 2018. (Doc. 41.) "MERS Opp." refers to Municipal Employees' Retirement System of Michigan's Opposition to Competing Motions for Appointment as Lead Plaintiff, filed on July 9, 2018. (Doc. 43.)

adequacy requirements of Rule 23. Typicality is satisfied when a movant's claims "arise from the same course of events, and the other class members make similar legal arguments to prove liability." *Helfenbein v. Altair Nanotechnologies, Inc.*, No. 14 Civ. 7828 (AT), 2015 WL 12912278, at *2 (S.D.N.Y. May 15, 2015). Here, Moab's and all other class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are substantially identical. Like other class members, Moab claims that it: (1) purchased Macquarie securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and (3) was damaged as a result. *See Faig v. BioScrip, Inc.*, No. 13 Civ. 06922(AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (finding typicality satisfied when movant alleged "that it suffered financial losses due to material misstatements made by [the company] during the class period").

I also find that Moab satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the class' interests to be fairly and adequately represented, the lead plaintiff must not have interests that are antagonistic to the class, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is qualified to represent the interests of the class. *See BioScrip*, 2013 WL 6705045, at *3. Moab satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the class' claims. Moreover, Moab's interests seem to be aligned with those of the other class members and do not appear to be antagonistic to them in any way; there are no facts to suggest any actual or potential conflict of interest or other antagonism between Moab and other class members.

Additionally, Moab has selected Bernstein Litowitz as counsel to represent the class in

this action. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class actions effectively. Lastly, Moab is the sort of lead plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs" (internal citation omitted)).

Accordingly, Moab has satisfied Rule 23's typicality and adequacy requirements for the purposes of this stage of the litigation.

b. <u>Rebuttal of the Lead Plaintiff Presumption</u>

Goetz and MERS (together, the "Rebuttal Movants") attempt to rebut the statutory presumption designating Moab as lead plaintiff. The Rebuttal Movants assert that Moab is incapable of adequately representing the class because it is subject to unique defenses that threaten to become the focus of the litigation. In particular, the Rebuttal Movants claim that Moab representatives engaged in private conversations with certain Defendants during which Moab obtained material nonpublic information ("MNPI") about the Company and its securities. (Goetz Opp. 2–6; MERS Opp. 4.) By engaging in multiple non-public discussions with several of the individual Defendants regarding the nature of Moab's investment, its personal agenda, and the subject matter of this litigation, the Rebuttal Movants argue that Moab is subject to a unique defense not shared by the rest of the putative class and therefore should not be appointed lead

13

plaintiff.

The lead plaintiff presumption may be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff will not fairly protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2015 WL 1311073, at *9 (S.D.N.Y. Mar. 23, 2015) ("[M]ere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut [the lead plaintiff] presumption."). Relying on a letter sent by Moab President Michael Rothenberg to Macquarie on April 17, 2018, the Rebuttal Movants point to three instances during which Moab executives met or spoke with Macquarie management—(1) a November 10, 2017 telephone call between Rothenberg and Macquarie's head of investor relations, Jay Davis; (2) a November 28, 2017 investor group dinner hosted by the Company's management and attended by Rothenberg; and (3) a March 8, 2018 discussion between Rothenberg, Davis, and Macquarie CFO Liam Stewart—but provide no evidence to support their claims that Moab received any MNPI during these private or semi-private conversations, (*see* Goetz Opp. 3–4; MERS Opp. 6), making their assertion mere speculation.

In response, Moab submitted a sworn affidavit from Rothenberg insisting that no MNPI was conveyed to or received by Moab during these dialogues. Indeed, Moab contends that the investor dinner was not private, but rather was attended by representatives from approximately a dozen different institutional investors. (*See* Rothenberg Decl. Ex. A ¶ 7.)[12] Moab indicates that

---

[12] "Rothenberg Decl." refers to the Declaration of Michael Rothenberg in Further Support of the Motion of Moab Partners, L.P. for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel, and Consolidation of All Related Actions, dated July 16, 2018. (Doc. 47-1.)

14

at the start of the dinner, Davis provided a disclaimer affirming Macquarie's compliance with the securities laws. (*See id.*) Similarly, Moab states that no MNPI was communicated during the two other discussions MERS cites. To the contrary, Davis' statement during the November 10, 2017 telephone discussion was entirely consistent with what Macquarie told other investors during the Class Period—that the IMTT business was "doing just fine." (*See id.* ¶ 8.) Finally, Moab's March 8, 2018 discussion with Davis and Stewart—which occurred outside of the Class Period and therefore could not have impacted Moab's Class Period investment decisions— likewise did not convey any MNPI. (*Id.*) Moreover, that discussion concerned part of Macquarie's business that is not alleged to be part of the securities fraud in this case and, in any event, reflected what the Company had represented publicly. (*See id.*) In short, Moab states that the communications cited by MERS were typical of those that other institutional investors had with Macquarie management during the Class Period, (*id.* ¶ 10), and that at no time during any of Moab's discussions with the Company did Macquarie convey any non-public information to Moab, (*see id.* ¶¶ 4–10).

The Rebuttal Movants' failure to proffer any proof that Moab received MNPI from Macquarie, coupled with Moab's declaration that no MNPI was communicated to Moab, is fatal to the Rebuttal Movants' claim. *See, e.g.*, *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02 CV 870-J(RBB), 2002 WL 32769239, at *9 (S.D. Cal. Oct. 11, 2002) (granting movant's lead plaintiff application where, in response to allegations of receiving MNPI, movant filed declaration stating that it received only publicly available information from company); *see also In re Independent Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 482–83 (S.D.N.Y. 2002) ("[A]typicality has been found where there is evidence that the named plaintiff received information, either directly or indirectly, from an officer or director. Atypicality has not been found, however, when there is

no evidence that inside information was shared despite the existence of some relationship between the named plaintiff and the officer or director."); *Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) (rejecting unique defenses argument, noting that "while the [o]bjecting [d]efendants have suggested that [plaintiff] may be subject to unique defenses arising out of his contact with [the company], nothing in the record indicates that [plaintiff's] decision to purchase [company] stock was based on information obtained from [the company]"); *Hallet v. Li & Fung, Ltd.*, No. 95 Civ. 8917(JSM), 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) (finding unique defenses argument "groundless" where plaintiff denied that any non-public information was conveyed and defendants "failed to present any evidence that [plaintiff] received the alleged inside information"); *cf. Blank v. Jacobs*, No. 03-CV-21111 (JS)(MLO), 2009 WL 3233037, at *5 (E.D.N.Y. Sept. 30, 2009) (finding that unique defense threatened to become the focus of the ligation where plaintiff admitted to receiving non-public information from company executives).[13]

Furthermore, courts have repeatedly recognized that the kind of communications between Moab and Defendants pose no barrier to appointment as lead plaintiff where no MNPI was exchanged. For instance, in *In re DVI Inc. Securities Litigation*, 249 F.R.D. 196 (E.D. Pa. 2008), the court certified a class after investors privately communicated with company management but only discussed topics that were "disclosed through public conference calls, press releases, SEC filings or other publicly available materials." *Id.* at 202. As a result, the court found that there was no basis to think that the issue would "become a major focus of the litigation." *Id.* at 202–

---

[13] MERS further claims that the fact that Moab altered its investment strategy—by purchasing numerous Macquarie shares—after its conversations with Defendants demonstrates that Moab received MNPI. I find this assertion to be illogical. It would make little sense for Moab to increase its position during the Class Period, only to then lose millions of dollars on that investment, if it was trading on information the market did not possess or knew the truth about the alleged misrepresentations at the heart of this action.

16

03 ("Since the PSLRA clearly contemplates that institutional investors—who are generally understood to communicate with corporate officers—will serve as class representatives, we decline to find that an investor will be precluded from serving as class representative merely because of his private communications with corporate insiders about publicly available information."). Other courts have reached similar conclusions. *See, e.g.*, *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 126 (D.D.C. 2017) (finding that "private meetings conceivably threaten to become a focus of the litigation only if a party could plausibly argue that insider information was exchanged"); *Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-786 ADM/TNL, 2016 WL 4098741, at *5 & n.3 (D. Minn. July 28, 2016) (finding pension fund typical where its adviser met one-on-one with management but received no MNPI); *Hallet*, 1997 WL 621111, at *3 ("[I]f the plaintiff has received information from company insiders that confirms, reflects, repeats, or even digests publicly available market information, that plaintiff is an appropriate class representative.").

Accordingly, because the Rebuttal Movants have presented no proof demonstrating that any unique defense will become a major focus of the litigation, they have failed to rebut the presumption that Moab should be appointed lead plaintiff in this matter.[14]

### C. *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of

---

[14] Rebuttal Movants also contend that Moab should be disqualified from serving as lead plaintiff because, after the securities fraud alleged in this action was revealed to investors, Moab issued several public letters accusing the Company of misleading investors and outlining certain "activist investor demands" including seeking to replace the members of the Company's board. (Goetz Opp. 2–6; MERS Opp. 4–5.) The Rebuttal Movants contend that this evidences divergent interests separate and apart from those of the putative class. However, Moab states that "that campaign has concluded, shareholders have voted, and Moab has all but exited its position in Macquarie." (Moab Opp. 2–3.) As such, I see no reason why that campaign would detract from Moab's prosecution of investors' claims in this case, particularly since that campaign spawned from the same misrepresentations at issue in this action. "Moab Opp." refers to the Reply Memorandum of Law of Moab Partners, L.P. in further support of its Motion for Appointment as Lead Plaintiff, Approval of its Selection of Lead Counsel, and Consolidation of Related Actions, filed on July 16, 2018. (Doc. 46.)

the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection." *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal quotation marks omitted).

Having reviewed Moab's motion papers, as well as the Firm Resume of Bernstein Litowitz attached as an exhibit to the Josefson Declaration, (*see* Moab Mem. 8–9; Josefson Decl. Ex. D),[15] I find that Moab's proposed lead counsel—the firm of Bernstein Litowitz—will adequately and effectively represent the interests of the class. The attorneys at Bernstein Litowitz have substantial experience with securities litigation and securities class actions, and have been found to be qualified to be lead counsel by other courts. (*See* Moab Mem. 8–9; Josefson Decl. Ex. D.) Thus, I approve Moab's selection and appoint Bernstein Litowitz as lead counsel.

### IV. Conclusion

For the foregoing reasons, movants' motions for consolidation are GRANTED based on the similarity of the Related Actions. Because I find that Moab is the presumptive lead plaintiff and no other movants have rebutted that presumption, Moab's motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED. The remaining motions from Paul Reimer, James Goetz, the Selz Funds, MERS, and the Stone Trust for appointment as lead plaintiff and for approval of lead counsel are DENIED. The Clerk of Court is respectfully requested to terminate the pending motions at Docket Numbers. 20, 23, 26, 29, 32, and 34.

Moab is directed to file an amended consolidated complaint no later than thirty (30) days

---

[15] "Josefson Decl." refers to the Declaration of Avi Josefson in Support of Moab Partners, L.P.'s Motion for Appointment as Lead Plaintiff, Approval of its Selection of Lead Counsel, and Consolidation of Related Actions, filed on June 25, 2018. (Doc. 37.)

after the date of issuance of this Opinion & Order. Defendants are directed to answer or otherwise respond to the amended consolidated complaint no later than thirty (30) days after Moab serves the amended consolidated complaint.

SO ORDERED.

Dated: January 30, 2019
      New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge