# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

CITY OF RIVIERA BEACH GENERAL
EMPLOYEES RETIREMENT SYSTEM,
on behalf of itself and all others similarly
situated,

        Plaintiffs,

v.

MACQUARIE INFRASTRUCTURE
CORPORATION, *et al.*

        Defendants.

Civil Action No. 1:18-cv-03608-VSB

**Oral Argument Requested**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
# MACQUARIE INFRASTRUCTURE MANAGEMENT (USA)'S
# <u>MOTION TO DISMISS</u>

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 2

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ........................................................................................................... 6

I.    PLAINTIFF HAS NOT PLED A SECTION 20(a) CONTROL PERSON CLAIM ......... 7

    A.    PLAINTIFF HAS NOT PLED A PRIMARY VIOLATION. .............................. 8

    B.    PLAINTIFF FAILS TO ALLEGE ACTUAL CONTROL. ................................. 9

    C.    PLAINTIFF FAILS TO ALLEGE MIMUSA'S CULPABLE
       PARTICIPATION. ......................................................................... 11

II.   PLAINTIFF HAS NOT PLED A SECTION 15 CONTROL PERSON CLAIM ........... 14

III.  PLAINTIFF FAILS TO PLEAD AN INSIDER TRADING CLAIM ........................... 16

    A.    PLAINTIFF FAILS TO PLEAD A PREDICATE VIOLATION. ...................... 16

    B.    PLAINTIFF'S PURCHASES WERE NOT CONTEMPORANEOUS
       WITH MIMUSA'S SALES. ............................................................... 19

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)...........................................................................7, 9, 11

*In re Am. Realty Capital Properties, Inc. Litig.*,
  No. 15-MC-40 (AKH), 2016 WL 11110435 (S.D.N.Y. Aug. 5, 2016)....................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................5

*In re AST Research Sec. Litig.*,
  887 F. Supp. 231 (C.D. Cal. 1995) ..............................................................................20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)..............................................................................6, 7, 8, 18

*In re Authentidate Holding Corp.*,
  No. 05 CIV 5323 (LTS)(DFE), 2006 WL 2034644 (S.D.N.Y. July 14, 2006) .....................18

*Basile v. Valeant Pharm. Int'l, Inc.*,
  SACV 14-2004-DOC (JCGx), 2015 WL 7352005 (C.D. Cal. 2015) ....................................19

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011)............................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................5

*Chill v. General Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996)...................................................................................12, 13

*DeMaria v. Andersen*,
  153 F. Supp. 2d 300 (S.D.N.Y. 2001)............................................................................14

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002).......................................9

*Ellison v. American Image Motor Co.*,
  36 F. Supp. 2d 628 (S.D.N.Y. 1999)..............................................................................14

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
  343 F.3d 189 (2d Cir. 2003)...........................................................................................5

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & ERISA Litig.*,
    503 F. Supp. 2d 25 (D.D.C. 2007) ....................................................................19, 20

*Gruber v. Gilbertson*,
    No. 16 CV 9727, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ........................19, 20

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ..............................................................................................5

*Jameson v. Prudential-Bache Sec.*,
    No. 89-civ-1043 (PNL), 1990 WL 52197 (S.D.N.Y. Apr. 18, 1990) ........................6

*Kalin v. Xanboo, Inc*,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007) ....................................................................10, 11

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ..........................................................................................13

*In re KeySpan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ..........................................................................16

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) ..............................................................14

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011) ..........................................................................................14

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y.1999) ..............................................................................12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ..........................................................................15

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013) ............................................................................7

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
    559 F. Supp. 800 (S.D.N.Y.1983) ................................................................................20

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ..........................................................................20

*P. Stolz Family P'ship, L.P. v. Daum*,
    166 F. Supp. 2d 871 (S.D.N.Y. 2001) ..........................................................................14

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v.
    Arbitron Inc.*,
    741 F. Supp. 2d 474 (S.D.N.Y. 2010) ..........................................................................12

*In re Ply Gem Holdings, Inc.*,
 135 F. Supp. 3d 145 (S.D.N.Y. 2015) ....................................................................15

*In re Pretium Res. Inc. Sec. Litig.*,
 256 F. Supp. 3d 459 (S.D.N.Y. 2017) .....................................................................3

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*,
 714 F. Supp. 2d 475 (S.D.N.Y. 2010) .............................................................14, 15

*In re Refco, Inc. Sec. Litig.*,
 503 F. Supp. 2d 611 (S.D.N.Y. 2008) .................................................9, 13, 16, 19

*Ressler v. Liz Claiborne, Inc.*,
 75 F. Supp. 2d 43 (E.D.N.Y. 1998) ......................................................................17

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004) ...................................................................................5

*In re Sec. Capital Assur. Ltd. Sec. Litig.*,
 No. 07 Civ. 11086 (DAB), 2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011) ............14

*SEC v. First Jersey Sec., Inc.*,
 101 F.3d 1450 (2d Cir. 1996) .............................................................................7, 8

*Shields v. Citytrust Bancorp, Inc.*,
 25 F.3d 1124 (2d Cir. 1994) ..................................................................................13

*Slayton v. Am. Exp. Co.*,
 604 F.3d 758 (2d Cir. 2010) ....................................................................................8

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
 33 F. Supp. 3d 401 (S.D.N.Y. 2014) .......................................................................8

*In re Stratus Computer Litig.*,
 No. CIV. A. 89-2075-Z, 1992 WL 73555 (D. Mass. Mar. 27, 1992) .....................20

*Strougo v. Barclays PLC*,
 334 F. Supp. 3d 591 (S.D.N.Y. 2018) ....................................................................11

*In re Take-Two Interactive Sec. Litig.*,
 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...........................................11, 12, 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) .........................................................................................11, 18

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ................................................................................................10

*In re Vale S.A. Sec. Litig.*,
   No. 1:15-CV-9539-GHW, 2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ............................12

*Weintraub v. Texasgulf Inc.*,
   564 F. Supp. 1466 (S.D.N.Y. 1983) .......................................................................................10

*Wilson v. Comtech Telecommunications Corp.*,
   648 F.2d 88 (2d Cir. 1981) .....................................................................................................19

**Statutes**

15 U.S.C. § 78u–4 ...........................................................................................................2, 5, 16

Fed. R. Civ. P. 9(b) ...............................................................................................2, 5, 7, 15, 16

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff's attempt to shoehorn Defendant Macquarie Infrastructure Management (USA) Inc. ("MIMUSA") into this action by asserting control person and insider trading claims against MIMUSA is groundless.

The gravamen of all Plaintiff's various claims is its assertion that co-Defendant Macquarie Infrastructure Company ("MIC") and certain of its executives failed to disclose facts and risks regarding MIC's subsidiary International-Matex Tank Terminals ("IMTT").   MIC and the Individual Defendants[1] demonstrate in their motion to dismiss that Plaintiff has failed to plausibly state claims for which relief may be granted because, among other things, the allegedly undisclosed facts and allegedly concealed risks were in fact fully disclosed and otherwise widely known to the market during the class period.   MIMUSA adopts and incorporates by reference the arguments in MIC and the Individual Defendants' motion to dismiss, as well as those in co-Defendant Barclays' motion to dismiss, and requests dismissal on the same grounds of the claims against MIMUSA.

Even if Plaintiff had pled valid claims against the other defendants, Plaintiff has not done so against MIMUSA.

Plaintiff's case against MIMUSA is based entirely on Plaintiff's conclusory allegations that MIMUSA controlled MIC pursuant to a management contract, that some of MIC's officers and employees, including Individual Defendants Hooke and Stewart, were MIMUSA employees, and that MIMUSA sold MIC shares more than a year before the announcement and stock drop that triggered this lawsuit.   Aside from these allegations, Plaintiff does not allege that MIMUSA

---

[1]   The Individual Defendants are James Hooke, Jay Davis, Liam Stewart, Richard D. Courtney, Robert Choi, Martin Stanley, Norman W. Brown, George W. Carmany III, Henry E. Lentz, Ouma Sananikone, and William H. Webb.

had any role whatsoever in the events recounted in the Complaint.   No MIMUSA director, officer, or employee, acting in that capacity, is alleged to have been involved in any of the conduct at the heart of Plaintiff's claims.    Nor does Plaintiff allege that MIMUSA held a controlling interest in MIC or controlled any proportion of MIC's board.

These conclusory and threadbare allegations fail to state a plausible claim or put MIMUSA on notice of the accusations against it and do not meet the stringent pleading requirements of Rule 9(b) and the PSLRA.

Plaintiff's control person claims against MIMUSA (Counts II and VI) fail because Plaintiff has not alleged any of the three elements for control person liability.   Specifically, Plaintiff has not alleged a primary violation of the securities laws by MIC, that MIMUSA acted as a control person of MIC, or that MIMUSA was a culpable participant in the alleged wrongdoing.

Plaintiff's insider trading claim against MIMUSA (Count III) fails because Plaintiff has not plausibly alleged with particularity a predicate act of insider trading or that Plaintiff conducted a contemporaneous trade with MIMUSA.

Hence, MIMUSA moves to dismiss with prejudice the Consolidated Class Action Complaint for failure to state a claim pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4.

## BACKGROUND

The Complaint is premised on a series of alleged misrepresentations and omissions by MIC and certain of its executives between January 2016 and February 2018.[2]   When amending

---

[2]     For a more detailed discussion of the facts underlying the primary violations alleged in the Complaint, see the Memorandum of Law in Support of Macquarie Infrastructure Corporation's and the Individual Defendants' Motion to Dismiss (the "MIC Brief") at 5–10.

the Complaint, Plaintiff added MIMUSA as a defendant on claims for control person liability

under Section 20(a) of the Exchange Act (Count II) (Compl. ¶¶ 326–29) and Section 15 of the

Securities Act (Count VI) (*id.* ¶¶ 393–98); and insider trading in connection with a secondary

public offering of MIC stock in November of 2016 under Section 20A of the Securities Act

(Count III) (*id.* ¶¶ 330–35).[3]

However, Plaintiff's allegations in support of its claims against MIMUSA are conclusory

and threadbare.

With respect to the control person claims, Plaintiff offers the broad assertion that

MIMUSA "acts as manager of [MIC] and is responsible for [MIC]'s day-to-day operations and

affairs and oversight of the management teams of Macquarie's operating segments." Compl. ¶

29.   Plaintiff provides no particulars whatsoever about how MIMUSA performs these duties.

Plaintiff also omits that the prospectus cited in the Complaint states that MIMUSA provides

management services to MIC "subject to the oversight and supervision of [MIC's] Board of

Directors."[4]

Plaintiff alleges that "[MIMUSA] assigned certain of its employees, including Defendant

James Hooke—[MIC]'s CEO through most of the Class Period—and Defendant Liam Stewart—

[MIC]'s CFO throughout the Class Period—to [MIC]." Compl. ¶ 29.   Plaintiff further avers,

without elaboration, that MIC "relies on personnel assigned by [MIMUSA]." *Id.* ¶ 28.

However, the only other MIMUSA employee that Plaintiff identifies in the Complaint is IMTT

---

[3]     The Complaint at one point mistakenly lists MIMUSA as a defendant with respect to Count I, but the
parties have stipulated that Plaintiffs do not assert Count I against MIMUSA.   *See* Doc. No. 83 (order
granting stipulation to clarify the Complaint).

[4]     Prospectus Supplement, S-4, S-17 (Nov. 3, 2016),   *available at*
https://www.sec.gov/Archives/edgar/data/1289790/000114420416132114/v452285_424b1.htm; *see*
Compl. ¶¶ 132, 268, 338.   This Court may take judicial notice of publicly available SEC filings.   *See In re
Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 466 n.1 (S.D.N.Y. 2017) (Broderick, J.).

CFO James May, who is not accused of any wrongdoing. *Id.* ¶ 139.   The Complaint does not allege that Hooke, Stewart, or anyone else engaged in any action (wrongful or otherwise) as an employee of MIMUSA, rather than as an officer of MIC.   Moreover, the Complaint does not identify a single transaction that MIMUSA allegedly controlled.

In short, Plaintiff does not allege that MIMUSA knew of or participated in *any* of the purported misrepresentations or that MIMUSA controlled any defendant alleged to have made misrepresentations.   Plaintiff does not allege that MIMUSA controlled the board of MIC. Plaintiff does not allege that MIMUSA owned a controlling interest in MIC.

With respect to the insider trading claim, Plaintiff does not specifically allege that MIMUSA possessed any material non-public information.   Plaintiff alleges that MIMUSA completed a sale of stock through a public offering on November 9, 2016, equal to nearly 40% of its ownership stake in MIC. *Id.* ¶¶ 29, 333.   The Complaint mentions that in June 2015 — over a year before the 2016 sale — MIMUSA sold 27.6% of its then-current holdings, *id.* ¶ 309, but Plaintiff does not allege that this sale was the product of insider trading.   Plaintiff alleges that it purchased MIC shares on November 3, 4, and 7, days *before* the MIMUSA sale. *Id.* ¶ 333. More than fifteen months later, on February 21, 2018, the stock price drop which is the subject of this litigation occurred. *Id.* ¶ 201.

The Complaint asserts that "[t]he cumulative knowledge regarding the matters addressed herein of all members of [MIC's] senior management team, including the Officer Defendants, is properly imputed to [MIC]." *Id.* ¶ 283.   In contrast, Plaintiff does not allege that any knowledge should be imputed to MIMUSA.   Plaintiff alleges that "[o]n taking complete control of IMTT in July 2014, [MIC] also installed a longstanding [MIMUSA] employee, James May, as CFO." *Id.* ¶ 289.   However, the Complaint is silent as to what May knew or what he may have

communicated to MIMUSA.  Nor does the Complaint allege that Hooke, Stewart, or anyone else communicated material, non-public information to MIMUSA.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal is proper if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 194 (2d Cir. 2003).  Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  And "although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation and internal quotation marks omitted).

The pleading standard is heightened by Rule 9(b), which requires that "[i]n alleging fraud… a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To satisfy this standard, a complaint must: (1) identify each allegedly fraudulent statement; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  The PSLRA further stiffens the *Twombly/Iqbal* standard.  Pursuant to the PSLRA, a plaintiff must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).  A plaintiff must allege facts

"(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  In particular, "a securities fraud complaint must specifically allege facts in support of each element of the claim." *Jameson v. Prudential-Bache Sec.*, No. 89-civ-1043 (PNL), 1990 WL 52197, at *2 (S.D.N.Y. Apr. 18, 1990).

## ARGUMENT

MIMUSA hereby incorporates and adopts the arguments made by MIC and the Individual Defendants in support of their motion to dismiss.  As noted by the other moving defendants, the supposedly undisclosed facts and concealed risks upon which Plaintiff predicates its primary securities fraud claims were disclosed and/or were widely known to the market throughout the class period.  This is fatal to Plaintiff's claims.  Moreover, all of the identified statements by MIC or the Individual Defendants were immaterial statements of corporate optimism; forward-looking statements; or not adequately pleaded to be false.  Finally, Plaintiff fails to plead a strong inference of scienter by any of those defendants.  Plaintiff's failure to adequately allege a primary violation of the Exchange Act or the Securities Act dooms Plaintiff's secondary control person claims against MIMUSA under Section 20(a) of the Exchange Act and Section 15 of the Securities Act.

Even absent Plaintiff's failure to plead primary violations, Plaintiff's control person claims against MIMUSA would be fatally deficient because Plaintiff has failed to allege with particularity that MIMUSA controlled MIC's statements or culpably participated in the alleged violations of the securities laws.

Plaintiff's insider trading claim against MIMUSA suffers from similar pleading defects. Plaintiff does not allege any predicate act of insider trading by MIMUSA:  Plaintiff does not allege that MIMUSA possessed any insider knowledge or had an improper motive in connection with the November 2016 public offering.  Finally, Plaintiff has not shown that it bought stock contemporaneously with MIMUSA's sale.  Accordingly, all claims against MIMUSA should be dismissed.

## I.   PLAINTIFF HAS NOT PLED A SECTION 20(a) CONTROL PERSON CLAIM

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns*, 493 F.3d at 108; *see SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996).  Rule 9(b) and the PSLRA require that Plaintiff allege both the primary violation of securities fraud and MIMUSA's culpable participation with particularity. "[T]he heightened pleading standards of the PSLRA apply with respect to the third-prong of a § 20(a) claim, which requires plaintiffs to allege facts demonstrating that the defendant was a culpable participant.   In order to plead culpable participation then, Plaintiff must plead with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind, *i.e.*, scienter."  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also In re Alstom SA*, 406 F. Supp. 2d 433, 491 (S.D.N.Y. 2005) ("[C]ulpable participation must be pled with particularity.").[5]

---

[5]    While a "small number of district courts have maintained that the Second Circuit's decision to include 'culpable participation' as an element of a prima facie case fails to convert it into a pleading requirement for a Section 20(a) claim because culpable participation is a less demanding standard than scienter,"

Plaintiff fails to plausibly allege any of the three required elements.

### A.    Plaintiff Has Not Pled a Primary Violation.

For the reasons explained in the MIC Brief, Plaintiff has failed to sufficiently allege a primary securities fraud violation under Section 10(b) or Rule 10b-5.   MIMUSA hereby incorporates and adopts those arguments.   Specifically, Plaintiff has not sufficiently alleged with particularity (1) any material misstatement or omission by any defendant, (2) scienter, or (3) loss causation.   The purported misstatements alleged by Plaintiff are either immaterial expressions of corporate optimism, forward-looking statements protected by the PSLRA's safe harbor provision and the bespeaks caution doctrine, and/or statements that Plaintiff does not adequately allege to be false.   Plaintiff fails to plead the required strong inference of scienter by alleging that the defendants had a motive to commit fraud or that the defendants engaged in conscious or reckless misconduct.   Finally, Plaintiff fails to plead loss causation because MIC's February 2018 announcements did not reveal the truth underlying any alleged previous misstatement.   *See* MIC Brief at 11–31.

Without a primary violation of the Exchange Act, no Section 20(a) liability can exist.   "It is axiomatic that liability for a Section 20(a) violation is derivative of liability for a Section 10(b) violation."   *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 778 (2d Cir. 2010) (district court properly dismissed Section 20(a) claim because "in order to establish a prima facie case of liability under § 20(a), a plaintiff must show a primary violation by a controlled person").

---

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014), the overwhelming weight of authority in this District holds that Plaintiffs must plead culpable participation with particularity as an element of control person liability.   This approach is more faithful to Second Circuit precedent and gives proper effect to the PSLRA.   *Id.*; *see ATSI Commc'ns*, 493 F.3d at 108; *First Jersey*, 101 F.3d at 1472.

### B.      Plaintiff Fails to Allege Actual Control.

Plaintiff has not alleged with particularity that MIMUSA had actual control over a controlled person or a specific transaction at issue — that is, "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 240.12b–2.

Plaintiff offers no particularized allegations in the Complaint regarding how MIMUSA controls MIC.  Plaintiff attempts to plead control merely by offering conclusory statements that MIMUSA has a management services agreement with MIC under which MIMUSA (i) "acts as manager of [MIC] and is responsible for [MIC]'s day-to-day operations and affairs and oversight of the management teams of [MIC]'s operating segments," and (ii) supplies certain of its employees to MIC who then act as officers of MIC and its subsidiaries.  Compl. ¶ 29.

But "responsibility" and "oversight" and lending employees are not control.  "[E]xercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)."  *In re Alstom SA*, 406 F. Supp. 2d at 487.  And simply invoking the term "Manager" is insufficient.  "To prevail on a § 15 claim, '[a] plaintiff is required to prove actual control, not merely control person status.'"  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y. 2008) (alteration in original) (quoting *In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003)); *see also In re Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475 SHS, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (dismissing Section 20(a) claim "because [plaintiffs] have failed to allege control person status in anything but conclusory terms").  Plaintiff's Complaint does not meet this standard.

As the November 3, 2016 prospectus cited in the Complaint explains, MIMUSA acts "subject to the oversight and supervision of [MIC's] Board of Directors."[6]  Plaintiff does not allege that the management services agreement permits MIMUSA, rather than MIC's officers and directors, to direct MIC's policies or to order specific transactions.  Plaintiff does not allege that MIMUSA ever directed MIC's policies or ordered specific transactions.  Plaintiff does not allege that MIMUSA possesses a controlling share of MIC or controls its board.  To the contrary, MIC's public filings show that MIMUSA reports to MIC's board.

Plaintiff alleges that two MIMUSA employees — James Hooke and Liam Stewart — served as officers of MIC.  However, Plaintiff does not allege that once they became MIC officers, Hooke or Stewart acted in their capacity as MIMUSA employees, rather than as officers of MIC.  As the Supreme Court has recognized, individuals with multiple roles in a corporate family "can and do 'change hats' to represent . . . two corporations separately," and, in those circumstances, "courts generally presume" the person is acting on behalf of the company to which his or her actions relate.  *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).  "A person can hold positions as a corporate officer, stockholder, and director of two companies, and yet can be acting in only one of those two roles at a given moment."  *Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007); *see Weintraub v. Texasgulf Inc.*, 564 F. Supp. 1466, 1470 (S.D.N.Y. 1983) ("it is clear that a director's knowledge may not properly be imputed to a corporation unless it is gained within the scope of his activity with respect to that corporation").  All actions by Hooke and Stewart described in the Complaint related to MIC, not MIMUSA, and

---

[6]     Prospectus Supplement, S-4, S-17 (Nov. 3, 2016), *available at* https://www.sec.gov/Archives/edgar/data/1289790/000114420416132114/v452285_424b1.htm.

are alleged by Plaintiff to have been taken in Hooke and Stewart's capacity as MIC officers.[7] Plaintiff's failure to allege that Hooke and Stewart acted in their capacity as MIMUSA employees prevents Plaintiff from using these individuals' actions to show control person liability.   Further, Plaintiff does not allege that Hooke or Stewart controlled MIC, and it is plainly established law that "officer or director status alone does not constitute control for the purposes of Section 20(a) liability." *In re Alstom SA*, 406 F. Supp. 2d at 487 (granting motion to dismiss for, *inter alia*, failure to establish control).

Finally, Plaintiff does not allege that MIMUSA had actual control over any wrongful transaction.   "[T]he Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the transaction in question."   *Id*. (quotation marks omitted); *see Kalin*, 526 F. Supp. 2d at 405 ("Actual control over the alleged wrongdoer and the purported transactions at issue is essential for control person liability.").   None of the statements referenced in the Complaint were alleged to have been issued by, attributable to, or directed by MIMUSA. Plaintiff's control person claim fails on this ground as well.

## C.   Plaintiff Fails to Allege MIMUSA's Culpable Participation.

"'Culpable participation' is established by alleging scienter on the part of a controlling person to the extent that it would satisfy § 10(b) and Rule 10b-5." *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 596 (S.D.N.Y. 2018) (citation omitted).   Thus, "plaintiffs must aver particular facts giving rise to a strong inference that the defendants acted with the requisite scienter, i.e., with the intent to deceive, manipulate or defraud." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 268 (S.D.N.Y. 2008); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

---

[7]   *See* Compl. ¶¶ 11–12 ,18, 30, 32, 34, 38, 40–41, 47–50, 52, 55–56, 65, 67, 69–73, 76, 79, 105–13, 124–26, 130, 142, 149–53, 157, 159–61, 168–69, 186, 192–94, 198–99, 222, 228–35, 239–40, 243–46, 250–52, 254–57, 268–78, 286–89, 291–93, 295, 297–98, 310.

308, 324 (2007) (to qualify as "strong," an inference of scienter "must be more than merely 'reasonable' or 'permissible' — it must be cogent and compelling . . . in light of other explanations"). "An inference of scienter may be predicated upon facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d at 269. Recklessness requires "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron Inc.*, 741 F. Supp. 2d 474, 489, 492 (S.D.N.Y. 2010) (quoting *Chill v. General Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996)) (internal quotation marks omitted).

No allegation in the Complaint creates any inference, let alone a strong inference, that MIMUSA possessed intent to deceive or defraud or acted with recklessness. In fact, the Complaint does not allege that MIMUSA engaged in any wrongful conduct. Plaintiff does not attribute any of the actions of Hooke or Stewart to MIMUSA because the Complaint makes clear they were acting in their capacity as MIC officers. *See* Section I.B & n.7, *supra*; *In re Vale S.A. Sec. Litig.*, No. 1:15-CV-9539-GHW, 2017 WL 1102666, at *34 (S.D.N.Y. Mar. 23, 2017) (individual's scienter imputed to entity only where the individuals were "acting within the scope of their authority"). Plaintiff states no particular facts that even circumstantially indicate that MIMUSA possessed knowledge of any alleged material misrepresentation or omission by MIC. Even if the allegations against MIC or Individual Defendants were sufficient to show culpable conduct on the part of those defendants, Plaintiff would still not have met its burden of showing particular facts creating a strong inference of culpability as to MIMUSA. *See In re Livent, Inc.*

-12-

*Sec. Litig.,* 78 F. Supp. 2d 194, 213 (S.D.N.Y.1999) ("[A] claim may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.").

Plaintiff attempts to allege motive by pointing to MIMUSA's fee arrangement with MIC, because MIMUSA "benefitted directly from paying out as much cash to investors as possible." Compl. ¶ 304. The desire to reward investors is a legitimate and commonplace corporate motivation and "[m]otives that are generally possessed by most corporate directors and officers do not suffice" to plead scienter. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). "The desire for the corporation to appear profitable, the desire to keep stock prices high, and even the desire to keep stock prices high in order to increase officer compensation, are insufficient because they are common to all corporate executives and, thus, too generalized to demonstrate scienter." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d at 645 (quotation marks omitted). Indeed, "a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). Moreover, MIMUSA's fee structure was contractual and publicly disclosed. Even granting Plaintiff every plausible inference in its favor, Plaintiff has merely alleged that MIMUSA wished to increase its fees by rewarding shareholders. That is an entirely proper incentive. Indeed, MIMUSA had no motive to misrepresent IMTT's business or mislead shareholders by omission, because doing so would put their fees at risk. Plaintiff has done no more than show "a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor." *Chill*, 101 F.3d at 268.

## II.      PLAINTIFF HAS NOT PLED A SECTION 15 CONTROL PERSON CLAIM

It is well-settled that Section 15 of the Securities Act and Section 20 of the Securities

Exchange Act are parallel provisions.  *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d

167, 185–86 (2d Cir. 2011).  Hence, a number of well-reasoned decisions in this District have

held that the pleading requirements for a control person claim under Section 15 are identical to

those for a Section 20(a) claim.  A plaintiff must allege:  (1) a primary violation, (2) control of

the primary violator by the defendant, and (3) culpable participation by the controlling person.

*See In re Sec. Capital Assur. Ltd. Sec. Litig.*, No. 07 Civ. 11086 (DAB), 2011 WL 4444206, at

*7 (S.D.N.Y. Sept. 23, 2011) (Batts, J.); *Pub. Employees' Ret. Sys. of Mississippi v. Merrill

Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (Rakoff, J.); *Ladmen Partners, Inc.

v. Globalstar, Inc.*, 2008 WL 4449280, at *10 (S.D.N.Y. Sept. 30, 2008) (Preska, J.); *P. Stolz

Family P'ship, L.P. v. Daum*, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001), *rev'd in part on other

grounds*, 355 F.3d 92 (2d Cir. 2004); *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y.

2001) (Pauley, J.); *Ellison v. American Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y.

1999) (Chin, J.).[8]  In particular, courts in this district have required a showing of culpable

participation where, as here, the claims at issue sound in fraud.  *See, e.g.*, *In re Am. Realty

Capital Properties, Inc. Litig.*, No. 15-MC-40 (AKH), 2016 WL 11110435, at *3 (S.D.N.Y. Aug.

5, 2016) ("Although the Second Circuit has not addressed the issue, the district court decisions

require, where fraud is alleged, specific acts of culpable participation under [Section 15].");  *In re

---

[8]        Some district courts in this Circuit have reached a different conclusion regarding culpable participation, and
the Second Circuit has left open the question of whether a plaintiff must show culpable participation by an
alleged control person for purposes of Section 15.  *See In re Lehman Bros.*, 650 F.3d at 186.  However, the
decisions imposing the same pleading requirements for Section 15 and 20(a) claims have better support in
the statutory language, which is almost identical; in the legislative history, which shows that Sections 15
and 20(a) were intended to be parallel provisions; and in the Second Circuit case law, which has recognized
that Sections 15 and 20(a) are analogues and that culpable participation must be pled in a Section 20(a)
claim.

*Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 494 (S.D.N.Y. 2006) (dismissing Section 15 claims because they were based on claims "sounding in fraud" and the plaintiffs had "not raised a strong inference of scienter for any of the named Section 15 defendants").

Here, Plaintiff has failed to plead control person liability under Section 15 regardless of which standard applies.

For the reasons laid out in the MIC Brief, incorporated and adopted here, Plaintiff has not adequately alleged a primary violation of the Securities Act.  Because Plaintiff's Securities Act claims sound in fraud, they must be pled with particularity pursuant to Rule 9(b).  Plaintiff has failed to plead with particularity that the November 2016 offering documents contained material omissions or misrepresentations.   Moreover, the defendants "have satisfied their duty to disclose" with the documents' risk disclosures.  *In re Ply Gem Holdings, Inc.*, 135 F. Supp. 3d 145, 154 (S.D.N.Y. 2015).  Plaintiff also fails to allege that it purchased MIC stock directly in the November 2016 offering or that MIC acted as a statutory seller.  *See* MIC Brief at 31–36.  Without a primary violation of the Securities Act, no Section 15 liability can exist.

Moreover, as laid out in Section I.B, *supra*, Plaintiff has failed to allege that MIMUSA exercised control over MIC with respect to the November 2016 offering.  *See Pub. Employees' Ret. Sys. of Mississippi*, 714 F. Supp. 2d at 485 (dismissing Section 15 claims because "plaintiffs have failed to allege beyond 'formulaic recitation' how [Defendants] exercised control").

Finally, Plaintiff has failed to allege culpable participation by MIMUSA in any alleged violation of the Securities Act for the reasons discussed in Section I.C, *supra*.   With one exception, Plaintiff relies on the same alleged misrepresentations or omissions for its Exchange Act claims and Plaintiff's claims in connection with the November 2016 offering.  And, as MIC notes in its brief, Plaintiff does not allege falsity with respect to the lone alleged misstatement

unique to Plaintiff's Securities Act claims: a reference to "strict environmental regulations" that serve as "'barriers' to entry."  Compl. ¶ 355.

## III.   PLAINTIFF FAILS TO PLEAD AN INSIDER TRADING CLAIM

"In order to state a claim under Section 20A(a), plaintiffs must: (1) plead a predicate insider trading violation of the Exchange Act, and (2) allege sufficient facts showing that the defendant traded the security at issue contemporaneously with the plaintiff."  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d at 309, 311 (citations and quotation marks omitted) (dismissing Section 20A claim because plaintiff failed "to allege sufficient facts showing that [defendants] possessed material, nonpublic information").  "Furthermore, claims under § 20A must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA."  *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 487 (S.D.N.Y. 2011).  Thus Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4.

Plaintiff has failed to adequately plead either element of a Section 20A violation.

### A.    Plaintiff Fails to Plead a Predicate Violation.

"[I]n the absence of a primary violation of Section 10(b) or Rule 10b–5, plaintiffs cannot state a claim for . . . insider trading under Section 20A."  *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 388 (E.D.N.Y. 2003).  Moreover, "[n]ot all violations of the Exchange Act can serve as predicate violations for purposes of § 20A; the predicate violation must be an act of insider trading."  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007). Plaintiff fails to satisfy these requirements.  A "predicate claim requires proof that [Defendants] possessed*, i.e.*, knew, material, nonpublic information," *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d at 311 n.50 (citation and quotation marks omitted).

Plaintiff fails to specify any "predicate act" committed by MIMUSA.  Plaintiff does not allege with particularity that MIMUSA possessed any insider knowledge regarding the exposure of MIC subsidiary IMTT to risks related to its reliance on revenue from the storage of No. 6 fuel oil.  Rather, Plaintiff's conclusory allegations of MIMUSA's insider knowledge are premised entirely on Plaintiff's conclusory assertions regarding MIMUSA's control of MIC.  Moreover, the Complaint does not allege that the prospectus for the November 2016 offering contained any material misstatements or omissions. *See* MIC Brief at 34–35.

Plaintiff's theory of scienter is contradicted by the timeline in the Complaint.  The Complaint alleges that MIMUSA sold stock on November 9, 2016.  But Plaintiff alleges the crucial drop in the stock price occurred more than fifteen months later, on February 21, 2018.

The long gap between MIMUSA's alleged stock sale and the drop in stock price makes any inference of improper action based on insider information impermissibly attenuated.  *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d at 279 ("The lapsing of nearly three months between [the] issuance of the alleged false statement and the lion's share of [insider's] stock sales, and of approximately four months between these substantial sales and the revelation of the alleged falsity, inescapably attenuates any inference of scienter that may be drawn in Lead Plaintiffs' favor.");  *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1998) (granting motion to dismiss insider trading claims because the "stock sales at issue took place, for the most part, over six months prior to the release of the negative disclosure.").

Plaintiff's allegation that the timing of the offering was "highly suspicious" is empty verbiage, unsupported by any detail.  Compl. ¶ 307.  In fact, MIC's stock price was robust well into 2017.  Indeed, MIC raised its quarterly dividends by 10% in November 2017.  *Id.* ¶ 158.

Most importantly, MIMUSA's November 9, 2016 sale occurred well before many of the alleged misrepresentations or omissions identified in the Complaint were made.  *See* Compl. ¶¶ 245–67 (identifying statements made in 2017); *In re Authentidate Holding Corp.*, No. 05 CIV 5323 (LTS)(DFE), 2006 WL 2034644, at *6 (S.D.N.Y. July 14, 2006) ("any connection between the February 2004 stock offering and failures to update a September 2004 statement are too attenuated to support a reasonable inference of scienter").   The timing of the sale fatally undercuts any attempt to plead scienter on the part of MIMUSA.

Finally, Plaintiff's own allegations show that the sale of stock was not unusual.  Plaintiff acknowledges that MIMUSA sold 27.6% of its then-current holdings in June 2015, a sale of similar magnitude to MIMUSA's November 2016 sale.   Compl. ¶ 309.   This previous sale contradicts Plaintiff's unsupported speculation that there was something suspicious about MIMUSA's November 2016 sale.  It is far more plausible that MIMUSA sold stock for no other reason than to generate revenue, as it had done in the past.  *ATSI Commc'ns*, 493 F.3d at 104 (affirming dismissal of insider trading claim because there was a "plausible nonculpable explanation for the defendants' actions that is more likely than any inference that the defendants intended to manipulate the market.") (quotation marks and alteration omitted); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007) ("To determine whether the plaintiff  has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.").   Plaintiff has manifestly failed to put forward particularized allegations that create a strong inference, through either motive or any circumstantial evidence, that MIMUSA possessed the requisite scienter to commit a predicate act of insider trading.

**B.      Plaintiff's Purchases Were Not Contemporaneous with MIMUSA's Sales.**

To state a claim under Section 20A, Plaintiff must also allege that the parties traded the securities contemporaneously.  Plaintiff has not done so.  *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d at 664 (deciding whether complaint "allege[s] with particularity that [defendant's] trading was contemporaneous with the plaintiffs'"); *Gruber v. Gilbertson*, No. 16 CV 9727, 2018 WL 1418188, at *18 (S.D.N.Y. Mar. 20, 2018) ("The more important issue for this Court is whether the Complaint pleads, with particularity, that [plaintiff's] trades were contemporaneous with [defendant's] stock sales."); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & ERISA Litig.*, 503 F. Supp. 2d 25, 46 (D.D.C. 2007) ("Plaintiffs must plead this contemporaneous transaction component with specificity."); *Basile v. Valeant Pharm. Int'l, Inc.*, SACV 14-2004-DOC (JCGx), 2015 WL 7352005, at *4 (C.D. Cal. 2015) ("Contemporaneous trading is a circumstance constituting fraud and must be pleaded with particularity.").

Plaintiff does not allege a contemporaneous transaction.   Plaintiff alleges that it purchased stock on November 3, 4, and 7.  Compl. ¶ 333.  However, Plaintiff alleges that MIMUSA sold its stock on November 9, 2016 — after the dates that Plaintiff claims to have made its purchases.  *Id.*  In a footnote, Plaintiff alleges that "[t]he Offering Documents were dated as of November 3, 2016, marking the beginning of the Offering."  *Id.* n.9.  However, Plaintiff does not specify that MIMUSA sold any stock before November 9, and if so, when. Any date later than November 7 would place MIMUSA's sale *after* Moab's purchase, and Plaintiff cannot plead any injury resulting from trading before MIMUSA's sales.  *See Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94–95 (2d Cir. 1981) ("[N]on-contemporaneous traders do not require the protection . . . because they do not suffer the disadvantage of trading with someone who has superior access to information."); *O'Connor &*

-19-

*Assocs. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800, 803 (S.D.N.Y.1983) ("[L]iability does not extend to those who traded prior to the defendant's breach of his duty to 'disclose or abstain'—that is, prior to the date of the defendant's trades.").

Plaintiff's allegations therefore fail to meet the particularity requirement. *See Gruber*, 2018 WL 1418188, at *18 ("Under ordinary circumstances, a plaintiff must allege the dates on which a defendant sold his stock to establish that the parties' trades occurred contemporaneously."); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 256 (S.D.N.Y. 2007) (plaintiffs met particularity requirement where they alleged contemporaneous trading and specified the dates of the defendants' trades); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 236 (C.D. Cal. 1995) ("Amorphous allegations that individuals sold stock on unspecified inside information, and on unspecified dates, which may or may not have been contemporaneous with plaintiffs' trades, do not state a claim under Section 20A."). Plaintiff therefore fails to plausibly allege a contemporaneous trade under Section 20A.

Moreover, even if Plaintiff adequately pleaded that it traded securities within a few days of MIMUSA this would not plead a valid claim. Numerous federal district courts have held that under Section 20A, "the sale by an insider and subsequent purchase by an aggrieved party must occur on the same day. The same day standard is the only reasonable standard given the way the stock market functions." *In re AST Research Sec. Litig.*, 887 F. Supp. at 234; *see In re Stratus Computer Litig.*, No. CIV. A. 89-2075-Z, 1992 WL 73555, , at *6 (D. Mass. Mar. 27, 1992) (only same-day trades are contemporaneous); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d at 47 ("[T]o expand the reach of Section 20A beyond same day trades would, in effect, permit plaintiffs to assert claims where it is implausible that they traded with defendants."). Plaintiff admits that MIC's stock was traded in a "highly efficient and

-20-

automated market." Compl. ¶ 311(a). It is implausible that Plaintiff would have been in privity with MIMUSA if they did not trade on the same day, and therefore legally impossible for Plaintiff to allege that it was injured by MIMUSA's sales.

## CONCLUSION

For the foregoing reasons and those set forth in the motion to dismiss by MIC and the Individual Defendants, MIMUSA requests that the Complaint be dismissed as to MIMUSA.

Dated:  New York, New York  
      April 22, 2019

/s/ Christopher M. Paparella  
Christopher M. Paparella  
STEPTOE & JOHNSON LLP  
1114 Avenue of the Americas  
New York, New York 10036  
Telephone: (212) 506-3900  
cpaparella@steptoe.com

*Attorneys for Defendant Macquarie Infrastructure Management (USA) Inc.*