# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MACQUARIE INFRASTRUCTURE CORPORATION, *et al.* <br><br> Defendants. | Civil Action No. 1:18-cv-03608-VSB <br><br> **Oral Argument Requested** |

# DEFENDANT MIMUSA'S REPLY
# IN FURTHER SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1
ARGUMENT .............................................................................................................................. 1
I.  MOAB HAS NOT PLED CONTROL PERSON CLAIMS ...................................................... 1
   A.  Moab Has Failed to Allege a Primary Violation. .................................................... 1
   B.  Moab Fails to Allege Actual Control by MIMUSA. ............................................... 2
      1.  *The Management Contract Does Not Show Control.* ..................................... 2
      2.  *Once Seconded, MIMUSA's Employees Were Dedicated to MIC.* ............... 3
      3.  *Moab Does Not Allege MIMUSA Controlled Any Unlawful Transaction.* ... 3
      4.  *The Cases Moab Cites Confirm that Detailed Allegations Are Required.* .... 3
   C.  Moab Fails to Allege Culpable Participation by MIMUSA. ................................... 5
II. MOAB HAS NOT PLED AN INSIDER TRADING CLAIM .................................................. 6
   A.  The Timing of MIMUSA's November 2016 Sale Was Not "Suspicious." ............ 6
      1.  *MIMUSA's Sale Occurred More Than a Year Before the Stock Drop.* ........ 7
      2.  *IMTT's Business Was Strong Before and After the Sale.* .............................. 7
      3.  *MIMUSA's Stock Sale Was Not Related to the October 2016 IMO 2020 Announcement.* ................................................................................................ 7
   B.  Hooke and Stewart's Knowledge Cannot Be Attributed to MIMUSA. .................. 8
CONCLUSION ........................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995) ............................................................................................... 5

*Alaska Elec. Pension Fund v. Asar*,
    768 F. App'x 175 (5th Cir. 2019) .................................................................................... 6

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................................. 2

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2nd Cir. 2007) ............................................................................................ 8

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) ............................................................................. 2

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018) ............................................................................. 2

*Ellison v. American Image Motor Co.*,
    36 F. Supp. 2d 628 (S.D.N.Y. 1999) ............................................................................... 4

*Fresno County Employees' Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017) ......................................................................... 7, 8

*In re Hi-Crush Partners L.P. Securities Litigation*,
    No. 12 CIV. 8557, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) .................................... 4

*Japan Halon Co. v. Great Lakes Chem. Corp.*,
    155 F.R.D. 626 (N.D. Ind. 1993) .................................................................................... 8

*Jayne v. Royal Jordanian Airlines Corp.*,
    502 F. Supp. 848 (S.D.N.Y. 1980) .................................................................................. 8

*Kalin v. Xanboo, Inc*,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007) ............................................................................. 2

*In re Oxford Health Plans, Inc.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) .................................................................................... 4

*In re Parmalat Securities Litigation*,
    594 F. Supp. 2d 444 (S.D.N.Y. 2009) ............................................................................. 4

*In re Refco, Inc. Securities Litigation*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................................................................. 4

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ............................................................................................. 6

*Stevelman v. Alias Res. Inc.*,
    174 F.3d 79 (2d Cir. 1999) ............................................................................................... 7

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ............................................................................. 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................................... 5, 6

**Other Authorities**

Prospectus Supplement (Nov. 3, 2016), available at
    https://www.sec.gov/Archives/edgar/data/1289790/000114420416132114/v45
    2285_424b1.htm; .............................................................................................................. 3

Schedule 14A (Apr. 1, 2016), available at
    https://www.sec.gov/Archives/edgar/data/1289790/000114420416092318/v43
    5386_def14a.htm .............................................................................................................. 3

# INTRODUCTION

Moab's opposition to this motion underscores the threadbare and implausible nature of its allegations against MIMUSA. Moab's claims against MIMUSA are based entirely on Moab's allegation that MIMUSA performed certain management functions for defendant MIC by seconding employees to act as MIC's officers. But Moab does not allege that any seconded employee engaged in wrongful conduct while acting as a MIMUSA director, officer, or employee. Rather, Moab alleges the seconded employees engaged in wrongful conduct while acting in their capacity as MIC's officers.

Moreover, during the class period, the seconded employees, defendants Hooke, Stewart, and Davis, did not sell any of their MIC stock. Rather, they all bought additional shares of MIC stock. Similarly, although MIMUSA sold stock in November 2016 (more than a year before the February 2017 price drop), MIMUSA used most of the fees it earned from MIC to buy more MIC stock. The business of MIC's subsidiary IMTT (and MIC's stock price) thrived throughout most of the class period and for more than a year after MIMUSA's offering. Tank utilization by IMTT remained at historically high levels and the amount of No. 6 oil being stored by IMTT increased, despite the announcement of IMO 2020 in 2008, until late 2017. When tank utilization dropped suddenly, MIC promptly reported it.

In such circumstances, MIMUSA submits that Moab has not alleged control person or insider trading claims against MIMUSA.

# ARGUMENT

## I. MOAB HAS NOT PLED CONTROL PERSON CLAIMS

### A. Moab Has Failed to Allege a Primary Violation.

As a threshold matter, Moab's control person claims fail because Moab has not alleged a primary securities fraud violation under either the Exchange Act or the Securities Act, as discussed

in MIC's Opening and Reply Briefs on these motions, which MIMUSA incorporates herein. *See* MIC Opening Br. at 11–35; MIC Reply Br. at 4–15.

### B. Moab Fails to Allege Actual Control by MIMUSA.

Moab's argument that MIMUSA controlled MIC is based only on conclusory allegations that MIMUSA managed certain aspects of MIC's business under a contract under which MIMUSA seconded defendants Hooke, Stewart and Davis to MIC.[1] These allegations do not satisfy Moab's obligation to plead with particularity that MIMUSA exercised actual control over both MIC *and* the specific transactions at issue in the Complaint. *See In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) ("[T]he Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question." (emphasis in original)); *Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 405 (S.D.N.Y. 2007) ("Actual control over the alleged wrongdoer and the purported transactions at issue is essential for control person liability."); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 484 (S.D.N.Y. 2001) (same).

#### 1. *The Management Contract Does Not Show Control.*

Merely alleging that certain of MIC's officers were seconded MIMUSA employees is not sufficient to show that MIMUSA controlled MIC. Control person liability must be based on allegations that show MIMUSA had actual control over MIC and specific transactions at issue rather than merely "control person *status*." *DoubleLine Capital LP v. Odebrecht Fin., Ltd*., 323 F. Supp. 3d 393, 460 (S.D.N.Y. 2018) (emphasis in original) (quoting *In re Smith Barney Transfer Agent Litig.*, 884 F.Supp.2d 152, 166 (S.D.N.Y. 2012)) (internal quotation marks omitted)

---

[1] Moab alleged that Davis was a MIMUSA employee for the first time in its Opposition. *Compare* Opp. at 35 *with* Compl. ¶¶ 28–32.

(allegation that parent company had "the power and authority" to cause its subsidiary to engage in the alleged wrongful conduct was insufficient to make out a control person claim).

### 2. *Once Seconded, MIMUSA's Employees Were Dedicated to MIC.*

Furthermore, Moab does not allege that once Hooke, Stewart, and Davis were seconded to MIC, they continued to act for MIMUSA. All of the actions that Moab identifies were carried out by Hooke, Stewart, and Davis in their capacities as MIC officers. *See* MIMUSA Opening Br. at 11 n.7.

### 3. *Moab Does Not Allege MIMUSA Controlled Any Unlawful Transaction.*

Moab's Opposition does not rebut MIMUSA's showing that the Complaint does not tie MIMUSA to *any* unlawful transaction. *See* MIMUSA Opening Br. at 10–11. In fact, the offering documents Moab cites show that *MIC's* majority-independent Board had control over all the transactions identified in the Complaint. The prospectus states that any work performed by MIMUSA for MIC was "[s]ubject to the oversight and supervision of [MIC's] Board of Directors…"[2] Moab does not plead any facts that show MIMUSA, rather than MIC's officers and directors, directed MIC's policies or ordered specific transactions, such as public disclosures. Moab does not allege that MIMUSA possesses a controlling share of MIC or controls its Board. Moab's allegations therefore do not show that MIMUSA was a control person directing the conduct described in the Complaint.

### 4. *The Cases Moab Cites Confirm that Detailed Allegations Are Required.*

The cases Moab cites in its Opposition actually support MIMUSA's argument that Moab has failed to adequately allege control.

---

[2] Prospectus Supplement, S-4, S-17 (Nov. 3, 2016), available at https://www.sec.gov/Archives/edgar/data/1289790/000114420416132114/v452285_424b1.htm; *see* Compl. ¶¶ 132, 268, 338; Schedule 14A, 19 (Apr. 1, 2016), available at https://www.sec.gov/Archives/edgar/data/1289790/000114420416092318/v435386_def14a.htm.

The plaintiff in *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133 (S.D.N.Y. 1999), pled that defendants "were aware of the internal control and accounting problems" and "participated directly in disseminating the false and misleading financial statements and other statements." *Id.* at 143; *see* Opp. at 46. Moab has not made similar particularized allegations regarding MIMUSA in the Complaint.

The plaintiff in *In re Hi-Crush Partners L.P. Securities Litigation*, No. 12 CIV. 8557, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013), alleged that the controlling corporation's co-CEOs, CFO, and COO had committed primary violations and had "acted within the scope of their employment as officers" of the controlling corporation when they managed the daily affairs of the controlled corporation. *Id.* at *20, *27; *see* Opp. at 46.

In *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007), the defendants argued they could not be control persons because they were themselves controlled by another individual. *Id.* at 638. By contrast, MIMUSA is arguing that there are no specific allegations in the Complaint that MIMUSA continued to control Hooke, Stewart, and Davis after they were seconded to MIC and began reporting to MIC's Board of Directors. *See* MIMUSA Opening Br. at 3 & n.4; Opp. at 36 n.20.

The employees in *Ellison v. American Image Motor Co.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999), were each affiliated with a single company, a broker-dealer, and were alleged to have acted in their capacity as employees of the broker-dealer in the conduct at issue. *Id.* at 633, 644; *see* Opp. at 36 n.20. The plaintiff in *In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444 (S.D.N.Y. 2009), unlike Moab, offered specific allegations that the controlling corporation provided a large portion of the controlled corporation's funding and controlled a key decision made by the controlled company. *Id.* at 459–60; *see* Opp. at 36 n.20.

Finally, Paragraph 69 of the Complaint, which alleges that MIC's New York offices were the "center of overall direction, control, and coordination'" for IMTT, does not even mention MIMUSA. *See* Opp. at 35.

### C. Moab Fails to Allege Culpable Participation by MIMUSA.

Moab's argument that it has pled particular facts creating a "strong inference" of the requisite scienter or culpability on the part of MIMUSA is not supported by anything but Moab's improperly vague and conclusory allegations regarding control. *See* Opp. at 47.

Having failed to offer specific allegations of MIMUSA misconduct, Moab asks the Court to infer scienter because MIMUSA's fee structure was based on MIC's stock price and MIMUSA sold shares in MIC's November 2016 offering. *See* Opp. at 47. These facts do not support an inference, let alone a "strong inference," of culpability. It is appropriate to link fees to positive share performance. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 273 (S.D.N.Y. 2008) (allegation that executive's compensation was tied to company's year-end earnings was insufficient to allege scienter); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[T]he existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter."). It was also appropriate for MIMUSA to sell its MIC shares to earn a profit. This is especially true given MIMUSA began selling down its shares in June 2015 — more than a year before the stock drop and at a time when IMTT was experiencing record high utilization, including increasing storage of No. 6 oil, despite downward trends in the market. *See* MIC Opening Br. at 7. The public record also shows that MIMUSA voluntarily reinvested most of its fees in MIC stock. MIC Opening Br. at 26–27.

The more plausible inferences are that the parties designed the compensation plan to align MIMUSA's incentives with MIC's and its shareholders' and that MIMUSA's sale was ordinary profit taking. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007) ("To

determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' [of scienter], a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." (internal citations omitted));

Moab's argument that "the Second Circuit has never categorically rejected an inference of scienter from compensation plans" is disingenuous. Opp. at 36. There is nothing about MIMUSA's compensation plan or fee structure that would give rise to strong inference of scienter, and Moab does not cite any case that found scienter from a similar fee structure.

## II. MOAB HAS NOT PLED AN INSIDER TRADING CLAIM

Moab's Opposition to MIMUSA's motion to dismiss the insider trading claim is based on the same arguments Moab makes in support of its control person claims and fails for the reasons discussed above. Moab's claim also fails because Moab's arguments that the timing of MIMUSA's stock sale was "suspicious" and that Hooke and Stewart's knowledge can be attributed to MIMUSA are groundless.

### A. The Timing of MIMUSA's November 2016 Sale Was Not "Suspicious."

Moab's argument that "'factual issues concerning whether insider trading was done at suspicious times and/or in suspicious amounts should not be considered on a motion to dismiss'" is an incorrect statement of the law. Opp. at 48 (quoting *APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *7 (S.D.N.Y. Nov. 19, 1999)). Moab relies on a parenthetical from a decades-old decision that describes a footnote in a Fifth Circuit case, *Rubinstein v. Collins*, 20 F.3d 160, 170 n.38 (5th Cir. 1994) — and that footnote is no longer good law following the Supreme Court's decision in *Tellabs*, 551 U.S. at 323–24. *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 182 n.36 (5th Cir. 2019) ("*Rubenstein* was decided before the Supreme Court, in *Tellabs*, required weighing the plausibility of alternate explanations.").

Moab has misstated the law because its assertion that the timing of MIMUSA's November 2016 stock sale was "suspicious" is not supported by any particular allegations and is undermined by the facts. *See* Opp. at 48.

### 1. *MIMUSA's Sale Occurred More Than a Year Before the Stock Drop.*

Moab's criticism of the timing of MIMUSA's sale is undermined by the fact that the sale occurred more than a year before the February 2018 stock price drop. There was no such long gap in *Stevelman v. Alias Res. Inc.*, 174 F.3d 79 (2d Cir. 1999). *See* Opp. at 49. The defendants there sold their stock in late May and early June of 1991 and the stock began to drop three months later in September 1991. *Stevelman*, 174 F.3d at 86. Nor is *Fresno County Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526 (S.D.N.Y. 2017), applicable. *See* Opp. at 49–50. The court in that case relied sales that vastly exceeded the amount sold here: "[t]he sheer magnitude of . . . sales by three of the individual 10(b) defendants," which amounted to 92%, 83%, and 68% of their shares. *comScore*, 268 F. Supp. at 555.

### 2. *IMTT's Business Was Strong Before and After the Sale.*

Moreover, before and after November 2016, MIC's IMTT division had record high utilization and increased storage of No. 6 oil despite downward trends in the market. *See* MIC Opening Br. at 7. MIC's stock price was robust and MIC raised its quarterly dividend in November 2017. Compl. ¶ 158. The November 2016 sale was also before many of the allegedly false statements and misrepresentations Moab relies on.

### 3. *MIMUSA's Stock Sale Was Not Related to the October 2016 IMO 2020 Announcement.*

Moab's reliance on the proximity of the sale to the October 2016 announcement that IMO 2020 would proceed on schedule is contradicted by Moab's own allegation that the announcement was "widely expected." Compl. ¶ 123. Moreover, Moab does not allege that the announcement

had any effect on the stock prices of MIC's competitors, who Moab asserts made appropriate disclosures.

Moab's attempt to distinguish MIMUSA's November sale from its June 2015 sale falls flat. *See* Opp. at 49–50. Each time, MIMUSA sold approximately the same amount of stock because its second sale was 40% of a smaller amount of stock given it previously sold 27.6% of its stock. *See* Compl. ¶ 309. *comScore* is not on point because the defendants there sold a much higher percentage of their shares (92% in the case of one defendant). 268 F. Supp. 3d at 554–55; *see* Opp. at 50.

Moab cannot succeed on its claim where a more plausible innocent explanation exists for MIMUSA's alleged actions. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2nd Cir. 2007) (affirming dismissal of insider trading claim because there was a "plausible nonculpable explanation for the defendants' actions that is more likely than any inference that the defendants intended to manipulate the market.") (quotation marks and alteration omitted).

### B. Hooke and Stewart's Knowledge Cannot Be Attributed to MIMUSA.

Moab's argument that the Court should attribute Hooke and Stewart's knowledge and actions to MIMUSA is unsupported by the Complaint. Moab has not alleged that after being seconded Hooke and Stewart acted in any role for MIMUSA. And, as noted, Hooke and Stewart reported to MIC's Board. *See* Opp. at 48 n.25. *Japan Halon Co. v. Great Lakes Chem. Corp.*, 155 F.R.D. 626 (N.D. Ind. 1993) and *Jayne v. Royal Jordanian Airlines Corp.*, 502 F. Supp. 848 (S.D.N.Y. 1980) are inapposite. *Japan Halon* says nothing about insider trading; it involved a discovery dispute in a trade secrets case. *Jayne* addressed whether personal jurisdiction would extend to a subsidiary, in light of "the easy interchange between the two companies in financial, promotional, and operational matters." 502 F. Supp. at 859.

Moab's contention that determining Hooke and Stewart's roles requires a "factual, case-by-case determination" is baseless. *See* Opp. at 48–49 n.25. It is not supported by an allegation of facts that support an inference that Hooke and Stewart's knowledge or actions should be attributed to MIMUSA. To the contrary, the Complaint does not allege that Hooke or Stewart shared information with MIMUSA or acted in any capacity for MIMUSA after they were seconded to MIC.

Paragraph 72 of the Complaint is unavailing. It states only that "Exchange Act Defendants also appointed additional ***Macquarie personnel*** to head up an expanded financial planning and analysis function at IMTT" (emphasis added). This is a reference to MIC, not MIMUSA, personnel because the complaint defines MIC as Macquarie and MIMUSA as Macquarie Management. *See* Compl. ¶¶ 28–29.

## CONCLUSION

For the foregoing reasons and those set forth in the motions to dismiss and the reply of MIC and the Individual Defendants, MIMUSA respectfully requests that the Complaint be dismissed as to MIMUSA.

Dated: New York, New York
July 22, 2019

/s/ Chris Paparella
Chris Paparella
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 506-3900
cpaparella@steptoe.com

*Attorneys for Defendant Macquarie Infrastructure Management (USA) Inc.*