21-2524
*City of Riviera Beach General Employees Retirement System et al. v. Macquarie Infrastructure Corporation et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-two.

PRESENT:
      PIERRE N. LEVAL,
      REENA RAGGI,
      MYRNA PÉREZ,
          *Circuit Judges.*
_____

Moab Partners, L.P.,

          *Lead Plaintiff-Appellant*,

City of Riviera Beach General Employees Retirement System, *on behalf of itself and all others similarly situated*,

          *Plaintiff*,

      v.                                  No. 21-2524

Macquarie Infrastructure Corporation, James Hooke, Jay Davis, Liam Stewart, Richard D. Courtney, Barclays Capital Inc., Robert Choi, Martin Stanley, Norman H. Brown, Jr., George W. Carmany, III, Henry E. Lentz, Ouma Sananikone, William H. Webb, Macquarie Infrastructure Management (USA) Inc.,

          *Defendants-Appellees*.
_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 20 2022

| | |
|---|---|
| **FOR LEAD PLAINTIFF-APPELLANT:** | SALVATORE J. GRAZIANO, Lauren A. Ormsbee, Jesse L. Jensen, James M. Fee, Bernstein Litowitz Berger & Grossmann LLP, New York, NY. |
| **FOR DEFENDANTS-APPELLEES:** | *Macquarie Infrastructure Corporation, James Hooke, Jay Davis, Liam Stewart, Richard D. Courtney, Robert Choi, Martin Stanley, Norman H. Brown, Jr., George W. Carmany, III, Henry E. Lentz, Ouma Sananikone, and William H. Webb* |
| | JOHN E. SCHREIBER, Frank S. Restagno, Winston & Strawn LLP, New York, NY. |
| | Linda T. Coberly, Winston & Strawn LLP, Chicago, IL. |
| | Lauren Gailey, Winston & Strawn LLP, Washington, DC. |
| | Richard W. Reinthaler, Pinehurst, NC. |
| | *Macquarie Infrastructure Management (USA) Inc.* |
| | Christopher M. Paparella, Justin Ben-Asher, Steptoe & Johnson LLP, New York, NY. |
| | *Barclays Capital Inc.* |
| | Susanna M. Buergel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY |

1      Appeal from a judgment of the United States District Court for the Southern District of

2 New York (Vernon S. Broderick, *J.*).

3      **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

4 **DECREED** that the October 7, 2021 judgment of the district court is **VACATED** and the case is

5 **REMANDED** for further proceedings.

1    Plaintiff Moab Partners, L.P. appeals from a judgment of the United States District Court
2    for the Southern District of New York dismissing Plaintiff's consolidated amended complaint (the
3    "Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Complaint alleges
4    Defendants made material omissions and false and misleading statements regarding one of
5    Macquarie Infrastructure Corporation's ("MIC") top-performing subsidiaries, International-Matex
6    Tank Terminals ("IMTT"), in violation of various provisions of the Securities Exchange Act of
7    1934 ("Exchange Act"), the Securities Act of 1933 ("Securities Act"), and the regulations
8    promulgated thereunder.  Defendants are MIC, MIC's manager, Macquarie Infrastructure
9    Management (USA) Inc. ("MIMUSA"), MIC's underwriter for its November 2016 secondary
10   public offering, Barclays Capital Inc., and certain former executives and directors of MIC, IMTT,
11   and MIMUSA.
12   Because we hold that Plaintiff adequately pleaded material omissions and facts giving rise
13   to a strong inference of scienter, we vacate the judgment and remand for further proceedings.  We
14   assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal,
15   which we only recount in a limited manner to explain our decision.

16                                    **DISCUSSION**

17   **I.     Standard of Review**

18   We review a dismissal under Rule 12(b)(6) de novo, accepting all factual allegations in the
19   complaint as true, and drawing all reasonable inferences in the plaintiff's favor.  *ATSI Commc'ns,*
20   *Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).  In doing so, we consider "any written
21   instrument attached to the complaint as an exhibit or any statements or documents incorporated in
22   it by reference, as well as public disclosure documents required by law to be, and that have been,
23   filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon

which they relied in bringing the suit." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (alterations omitted) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

## II. Material Misstatements or Omissions

The Complaint adequately alleges Defendants made material omissions and false or misleading statements. Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder) and Sections 11 and 12(a)(2) of the Securities Act prohibit material omissions or misstatements in certain documents in connection with purchases and sales of securities. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (Section 10(b) and Rule 10b-5 claims); *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119–20 (2d Cir. 2012) (Sections 11 and 12(a)(2) claims). That said, "a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). Rather, as relevant here, there are two circumstances which impose a duty on a corporation to disclose omitted facts. First, "a duty [to disclose] may arise when there is . . . 'a statute or regulation requiring disclosure,'" *Stratte-McClure*, 776 F.3d at 101 (quoting *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992)), such as Items 303 and 503 of SEC Regulation S-K. Second, "[e]ven when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (citing *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2012)).

Plaintiff alleges that Defendants omitted material information and made affirmative misstatements, to conceal (1) the extent of IMTT's exposure to No. 6 fuel oil, which was subject to an impending regulation ("IMO 2020") and the anticipated resulting losses of revenue; (2) the fact that IMTT's customer base included speculative commodities traders who typically move in

4

and out of the market based on short-term opportunities; (3) the extent of IMTT's need to undertake significant capital expenditures to repurpose No. 6 fuel oil storage tanks so that they would be suitable to store other liquid commodities; and (4) the related risks to MIC's historically predictable quarterly dividends (together, the "Alleged Omissions or Misstatements").

We agree with the district court that the majority of Defendants' alleged misstatements are not actionable, including several constituting non-actionable puffery or expression of corporate optimism.[1] Nonetheless, the federal securities laws require plaintiffs to adequately allege that defendants make material omissions *or* materially false or misleading statements, and we find that Plaintiff has satisfied that burden by pleading actionable omissions.

### A. Affirmative Duty Under Item 303 of Regulation S-K

Plaintiff has adequately alleged a "known trend[] or uncertaint[y]" that gave rise to a duty to disclose under Item 303. *Stratte-McClure*, 776 F.3d at 101 (quoting 17 C.F.R. § 229.303(a)(3)(ii)). Item 303 requires that a company disclose certain information "where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations." *Id.* (quoting Management's Discussion and Analysis of Financial Condition and Results of Operations at 13, Exchange Act Release No. 6835, 43 S.E.C. Docket 1330 (May 18, 1989) (hereinafter "SEC's Interpretive Release")); *see also* 17 C.F.R. § 229.303. The failure to make a material disclosure required by Item 303 can serve as the basis for claims under Sections 11 and 12(a)(2), and for a claim under Section 10(b) if the other elements have been sufficiently pleaded. *See Panther*

---

[1] For example, certain of the identified misstatements (such as those claiming MIC's businesses had been "boringly predictable" and "just the kind of unsexy business model we want") are "too general to cause a reasonable investor to rely upon them." *ECA, Loc. 104 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009). The same is true of MIC's statement describing infrastructure generally as an "inherently more stable asset class." Accordingly, on remand, the court need not consider them.

5

*Partners*, 681 F.3d at 120–22 (Sections 11 and 12(a)(2) claims); *Stratte-McClure*, 776 F.3d at 101–04 (Section 10(b) and Rule 10b-5 claim).

The SEC has explained that Item 303 requires disclosure "where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation." SEC's Interpretive Release at 14. Pertinently, the SEC's Interpretive Release sets forth an example relating to disclosure of "the reasonably likely material effect of a known uncertainty regarding implementation of recently adopted legislation":

> Where a trend, demand, commitment, event or uncertainty is known, management must make two assessments:
>
> (1) Is the known trend, demand, commitment, event or uncertainty likely to come to fruition? If management determines that it is not reasonably likely to occur, no disclosure is required.
> (2) If management cannot make that determination, it must evaluate objectively the consequences of the known trend, demand, commitment, event or uncertainty, on the assumption that it will come to fruition. Disclosure is then required unless management determines that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur.
>
> Each final determination resulting from the assessments made by management must be objectively reasonable, viewed as of the time the determination is made.

*Id.* at 19–20.

Crediting Plaintiff's allegations as true, IMO 2020's significant restriction of No. 6 fuel oil use was known to Defendants and reasonably likely to have material effects on MIC's financial condition or results of operation. In these circumstances, even if Defendants could not determine with certainty that IMO 2020 would be implemented, they were required to evaluate IMO 2020's consequences on the assumption that it would come to fruition and to disclose its potential impact unless Defendants "determine[d] that a material effect on the registrant's financial condition or

1   results of operations is not reasonably likely to occur." *Id*.  As pleaded, it would not have been

2   "objectively reasonable" for Defendants to determine that IMO 2020 would not likely have a

3   material effect on MIC's financial condition or operations.  *See Stratte-McClure*, 776 F.3d at 102–

4   03 (internal quotation marks omitted) (explaining that Item 303 materiality analysis requires

5   "balancing . . . both the indicated probability that the event will occur and the anticipated

6   magnitude of the event in light of the totality of the company activity" (emphases omitted) (quoting

7   *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988))).[2]

8   When reviewing the sufficiency of a complaint, a district court may not dismiss for lack

9   of materiality unless the alleged misstatements or omissions "are so obviously unimportant to a

10  reasonable investor that reasonable minds could not differ on the question of their importance."

11  *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 717 (2d Cir. 2011) (quoting *Ganino v. Citizens*

12  *Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000)).  As pleaded, a reasonable investor would consider

13  the omitted information important.

        B. Affirmative Duty to Disclose Information to Prevent Statements from Being Inaccurate, Incomplete, or Misleading

16  The district court also erred in determining that Plaintiff failed to plead any actionable

17  omissions or "half-truths."  Having chosen to speak about their base of customers, Defendants had

---

[2] The complaint also alleged that Defendants failed to meet their disclosure obligations under Item 503 of Regulation S-K ("Item 503"), since recodified as Item 105.  FAST Act Modernization and Simplification of Regulation S-K, 2019 WL 1437180, at *1 (12688-89) (Apr. 2, 2019).  It requires that a prospectus include a "discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105(a) (formerly 17 C.F.R. § 229.503(a)(c)).

The district court dismissed the claim under Item 503 without discussion.  Although this court has at times assumed without deciding that a violation of Item 503 will sustain an actionable claim, *Hutchison v. Deutsche Bank Securities Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011); *City of Pontiac Policemen's and Firemen's Retirement System v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014), we have never decided the issue.  We have no need to do so here.  We assume in the absence of explanation by the district court that its reasons for dismissing the Item 503 claims were the same as its reasons for dismissing the Item 303 claims.  We have found those reasons to be erroneous.  We therefore vacate the dismissal of the Item 503 claims, making no decision as to whether a violation of that rule supports a claim.

a duty to speak accurately, giving all material facts in addressing those issues to permit investors to evaluate the potential risks. *Setzer v. Omega Healthcare Investors, Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020) (holding that the company need not "disclose all the facts that pertain to a subject (many of which would be immaterial), but instead [must] not . . . omit material facts whose omission, in the light of what was stated, would be misleading."). The omissions are not cured by disclosures MIC did make—including those regarding "changes in government regulations" and "capital expenditures" related to repurposing tanks—which did not reveal the information necessary for the investing public to make a proper assessment of the alleged risks. *See JinkoSolar Holdings Co.*, 761 F.3d at 251 ("A generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability."). Accordingly, the generic cautionary language here does not satisfy Defendants' disclosure obligations.

### III. Scienter

We further conclude that the Complaint adequately alleges that Defendants acted with scienter in making the material omissions or false or misleading statements. The scienter requirement may be satisfied "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Ganino*, 228 F.3d at 168–69 (quoting *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

If we credit the allegations in the Complaint, there is sufficient circumstantial evidence that Defendants Hooke, Davis, Stewart, and Courtney were each in the unique position of knowing that IMTT had a significant portion of its storage reserved for No. 6 fuel oil, that significant upfront costs and lost revenues were associated with repurposing No. 6 oil tanks, that IMTT's customers

8

in the shipping industry—the last remaining market for No. 6 fuel oil—would be undergoing a significant shift in the time leading up to IMO 2020's enforcement, and that it was likely that revenue contributions would be down from IMTT, MIC's "top asset and largest profit-driver." Nonetheless, these Defendants did not make corresponding disclosures and, instead, allegedly minimized the exposure that IMTT faced from IMO 2020. *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) ("[Under Second Circuit precedent], securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements.").

Plaintiff further alleges that discussions regarding contract renewals were likely taking place at least as early as February 2017, and that around the same time, MIC began pursuing Epic Midstream, an operator of storage terminals focused on jet fuel, in an effort to diversify its portfolio and minimize the risk posed by IMTT's reliance on No. 6 fuel oil. The timing of these events allegedly permitted Defendants to announce the Epic acquisition at the same time they announced that IMTT's utilization rates were beginning to decrease, allowing Defendants to divert attention away from IMTT's declining performance. Considering "*all* of the facts alleged, taken collectively," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007), Plaintiff adequately pleaded strong circumstantial evidence of conscious recklessness "at least as strong as any opposing inference," *id.* at 326.

## IV. Control Person and Insider Trading Claims

The district court dismissed Plaintiff's claims under Section 15 of the Securities Act and Sections 20(a) and 20A of the Exchange Act based on Plaintiff's failure to plead a primary violation of securities law. *See Rombach v. Chang*, 355 F.3d 164, 177–78 (2d Cir. 2004) (explaining that control person claims brought under Sections 15 and 20(a) are "necessarily

9

predicated on" primary underlying violations of securities law); *see also Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022) (discussing primary violation requirement for Section 20A claims). Because we vacate and remand the district court's dismissal of Plaintiff's claims under Sections 11 and 12(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, we similarly vacate and remand the judgment on Plaintiff's claims under Section 15 of the Securities Act and Sections 20(a) and 20A of the Exchange Act for further consideration by the district court.

## CONCLUSION

We have considered all of the parties' remaining arguments and conclude they are without merit. For the foregoing reasons, we **VACATE** the judgment of the district court dismissing Plaintiff's Complaint, and we **REMAND** this case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10