**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and al others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MACQUARIE INFRASTRUCTURE CORPORATION, et al.,<br><br>Defendants. | Case No. 1:18-cv-03608-VSB<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF MACQUARIE INFRASTRUCTURE CORPORATION'S AND THE INDIVIDUAL DEFENDANTS' RENEWED MOTION TO DISMISS COUNTS IV, V, AND VI OF THE CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 4

    I.     The Parties ............................................................................................................ 4

    II.    Procedural History ................................................................................................ 6

    III.   This Court's Decision on Defendants' Original Motions to Dismiss the Complaint ............................................................................................................. 7

    IV.   The Second Circuit's Opinion .............................................................................. 9

    V.    Subsequent Proceedings and Defendants' Forthcoming Petition for Certiorari to the U.S. Supreme Court .................................................................. 10

LEGAL STANDARD ................................................................................................................... 11

ARGUMENT ................................................................................................................................ 12

    I.     MOAB'S SECURITIES ACT CLAIMS SHOULD BE DISMISSED ................ 12

        A.    Moab Has Not Sufficiently Pled Its Standing to Assert Securities Act Claims ............................................................................................... 12

        B.    Moab Has Not Alleged That MIC Was a Statutory Seller ....................... 14

        C.    Moab's Claim Under Section 15 Should Be Dismissed .......................... 15

CONCLUSION ............................................................................................................................. 16

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Ariad Pharm., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016)..................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................11, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................11, 12, 13

*Capri v. Murphy*,
  856 F.2d 473 (2d Cir.1988)....................................................................................................15

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...............................................................................................13

*In re Cosi, Inc. Sec. Litig.*,
  379 F. Supp. 2d 580 (S.D.N.Y. 2005)....................................................................................13

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J. Dec. 31, 2018)............................................................................14

*In re Deutsche Telekom AG Sec. Litig.*,
  2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)..........................................................................15

*Freidus v. Barclays*,
  734 F.3d 132 (2d Cir. 2013)...................................................................................................13

*Griffin v. PaineWebber, Inc.*,
  2001 WL 740764 (S.D.N.Y. June 29, 2001) .........................................................................15

*Gustafson v. Alloyd Co., Inc.*,
  513 U.S. 561 (1995)...............................................................................................................12

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009).....................................................................................................12

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
  650 F.3d 167 (2d Cir. 2011)...................................................................................................16

*Leidos, Inc. v. Indiana Public Retirement System*,
  No. 16-581 (U.S.)...................................................................................................................10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) ............................................................................................. 14

*Perry v. Duoyuan Printing*,
  2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) .............................................................. 14, 15

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ........................................................................................................ 14

*In re Pretium Res. Inc. Sec. Litig.*,
  256 F. Supp. 3d 459 (S.D.N.Y. 2017) ............................................................................... 4

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*,
  714 F.Supp.2d 475 (S.D.N.Y. 2010) ........................................................................... 3, 13

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ............................................................................................ 12

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015) .............................................................................................. 11

*Transenterix Inv'r Grp. v. Transenterix, Inc.*,
  272 F. Supp. 3d 740 (E.D.N.C. 2017) ............................................................................. 14

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ................................................................ 13

*Youngers v. Virtus Inv. Partners Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016) ............................................................................. 15

*Yung v. Lee*,
  432 F.3d 142 (2d Cir. 2005) ............................................................................................ 12

**STATUTES**

15 U.S.C. § 77*l*(a) ................................................................................................................ 12

15 U.S.C. § 77*o*(a) ............................................................................................................... 16

**RULES**

Fed. R. Civ. P. 9(b) .............................................................................................................. 12

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 11

Defendant Macquarie Infrastructure Corporation ("MIC" or the "Company") and the Individual Defendants[1] respectfully submit this memorandum of law in support of their renewed motion to dismiss Counts IV, V, and VI of the Consolidated Class Action Complaint (the "complaint," ECF No. 56).

## PRELIMINARY STATEMENT

Plaintiff Moab Partners L.P. ("Moab") accuses the former management and board of MIC of defrauding shareholders by failing to predict in *2016-17* the impact that a regulation not scheduled to go into effect until *2020* would have on one of its portfolio companies (International-Matex Tank Terminals ("IMTT")), which stores petroleum products and other bulk liquids. The complaint asserts claims under Sections 10(b), 20(a), and 20A of the Exchange Act and Sections 11, 12(a)(2), and 15 of the Securities Act. In September 2021, this Court dismissed the complaint in its entirety, finding that Moab failed to "plausibly allege [any] false statements or omissions," let alone the separate element of scienter for purposes of Moab's Exchange Act claims. The Second Circuit, in a summary order, vacated that ruling and remanded for further proceedings.

The "crux" of the complaint is Moab's contention that, prior to February 2018, MIC "concealed from investors that IMTT's single largest product was No. 6 fuel oil," which faced impending restrictions "on the bulk of its worldwide use" under "IMO 2020," a regulation proposed in 2008 that would restrict the sulfuric content of such oil if and when it took effect. *See* Opinion & Order at 13, ECF No. 121 (the "Opinion"). This Court previously rejected Moab's argument that Item 303 of SEC Regulation S-K required Defendants to predict before February 2018 that IMO 2020, then scheduled to take effect in 2020, was likely to have a

---

[1] The Individual Defendants are James Hooke, Jay Davis, Liam Stewart, Richard D. Courtney, Robert Choi, Martin Stanley, Norman H. Brown, Jr., George W. Carmany III, Henry E. Lentz, Ouma Sananikone and William H. Webb.

"material . . . unfavorable impact" on MIC's overall business, noting that the complaint failed to plead "when Defendants 'actually kn[ew]' of" facts that would have required such disclosure. *Id.* at 22. This Court also dismissed Moab's Exchange Act claims for the independent reason that the complaint failed to adequately plead facts supporting a strong inference of scienter because, *inter alia*, the complaint failed to "identify with specificity the knowledge Defendants had or when they acquired this knowledge," thus leaving Moab's scienter allegations fatally dependent on "unsupported assertions that Defendants 'should have' made [subsequent] disclosures sooner." *Id*. at 25 (internal quotation marks omitted). This Court held that the complaint also failed to plead facts demonstrating that Defendants had a plausible motive to commit fraud. As the Court noted, "no individual Defendant is alleged to have sold any MIC stock during the Class Period." *Id.* at 27. Indeed, public records reveal that they actually *increased* their holdings of MIC stock during that time.

In December 2022, the Second Circuit vacated this Court's decision in a summary order. While "agree[ing] with the district court that the majority of Defendants' alleged misstatements are not actionable," the Second Circuit concluded that Moab adequately pleaded that Defendants failed to make a required disclosure under Item 303. The complaint, in the Second Circuit's view, adequately alleged that, "even if Defendants could not determine with certainty that IMO 2020 would be implemented," its potentially "significant restriction of No. 6 fuel oil use was known to Defendants and reasonably likely to have material effects on MIC's financial condition or results of operation" if and when it finally went into effect. Summary Order at 6–7, ECF No. 130 (the "Second Circuit Opinion"). The Second Circuit then concluded that this purported Item 303 violation was sufficient to establish not only an actionable omission for purposes of Moab's securities law claims (*id*. 5–7), but also scienter under Section 10(b) because Defendants were,

supposedly, in the "position of knowing" that "it was likely" that IMO 2020 would reduce revenue yet made no "corresponding disclosures." *Id*. at 8–9.[2] The Second Circuit also found that Moab adequately alleged an actionable omission for purposes of Section 10(b) based on statements that the Defendants made concerning MIC's "base of customers." *Id.* at 7–8.

Because the Second Circuit found that the complaint adequately pleaded a primary violation of the securities laws, it "similarly vacate[d] and remand[ed] the judgment on Plaintiff's claims under Section 15 of the Securities Act and Sections 20(a) and 20A of the Exchange Act for further consideration by the district court." *Id.* at 9–10. The Second Circuit, like this Court, did not address other arguments made in Defendants' original motions to dismiss relating to Moab's claims under the Securities Act. Instead, it remanded the case "for further proceedings consistent with this order."

In accordance with the Second Circuit's directive, and this Court's recent order (ECF No. 132), MIC and the Individual Defendants hereby renew their motions to dismiss Moab's Securities Act claims. As explained below, these claims are deficient and should be dismissed for two independent reasons:

*First*, Moab has failed to plead that it has standing to assert the Securities Act claims included in the complaint. For purposes of Section 12(a)(2), Moab must allege that it bought MIC shares *directly* in the November 2016 secondary offering in question ("Secondary Offering"). It has not done so. Rather, Moab merely alleges, "rather coyly,"[3] that it purchased shares of MIC common stock "traceable to the [Secondary] Offering." Compl. ¶ 27. This is patently insufficient

---

[2] The Second Circuit's decision concerning Item 303 of SEC Regulation S-K is the subject of a forthcoming petition for a writ of certiorari to the U.S. Supreme Court.

[3] *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*, 714 F.Supp.2d 475, 484 (S.D.N.Y. 2010).

3

under Section 12(a)(2). And while tracing has been accepted for purposes of Section 11 claims, Moab's conclusory allegations in this regard likewise require dismissal of that claim.

*Second*, Moab's Section 12(a)(2) claim is subject to dismissal on the independent basis that the complaint fails to allege that MIC was a "statutory seller." Again, all Moab has done is allege, in the most conclusory fashion, that MIC was a "seller[], offeror[], and solicitor[] of sales of the securities offered." *Id.* ¶ 386. But Moab must put forward facts to show either that MIC sold shares for value or that MIC solicited sales of MIC shares, motivated by its own financial interests. Moab has failed to do so, warranting dismissal.

Because Moab has not alleged a primary violation of either Sections 11 or 12(a)(2), its claim under Section 15 should also be dismissed. Accordingly, and as discussed in greater detail below, this Court should dismiss the Securities Act claims (Counts IV–VI) with prejudice.

## BACKGROUND[4]

### I. The Parties

Plaintiff Moab is an activist investor that claims to have purchased over 500,000 shares of MIC common stock during the class period (February 22, 2016, through February 21, 2018), including 18,800 MIC shares "traceable" to the Secondary Offering of MIC shares conducted pursuant to a registration statement filed on April 5, 2016 (the "Registration Statement"), as updated by a prospectus supplement dated November 3, 2016 (the "Prospectus," and, collectively with the "Registration Statement," the "Offering Documents"). Compl. ¶ 27. In April 2018, before joining this lawsuit, Moab waged an unsuccessful public proxy fight against MIC's incumbent

---

[4] The "facts" set forth herein are taken from the complaint, documents incorporated by reference therein, publicly-available SEC filings, and other documents and information of which this Court may take judicial notice, copies of which are attached as exhibits to the accompanying Declaration of John Schreiber, dated April 6, 2023. *See In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 466 n.1 (S.D.N.Y. 2017). Unless otherwise stated, all "Ex." citations refer to the exhibits to the Schreiber Declaration.

directors, in which it advanced many of the same (flawed) arguments that permeate its complaint. Having failed to convince other MIC shareholders that the board's decision to retain cash (and decrease dividends) was improper, Moab now attempts to turn that decision into a cause of action under the federal securities laws. Moab seeks to represent a putative class consisting of all purchasers of MIC stock (i) between the dates of February 22, 2016, and February 21, 2018, and/or (ii) in or traceable to the Secondary Offering. *Id.* ¶ 399.

During the relevant time period, Defendant MIC was a publicly traded holding company that owned and operated a portfolio of profitable infrastructure-related businesses that generated significant free cash flow. There were four segments to MIC's portfolio, the largest of which was IMTT. *Id.* ¶ 21. MIC was acquired in 2021, and is now known as Atlantic Aviation Infrastructure Corporation. It is no longer a publicly traded company, and its sole stockholder is KKR Apple Bidco. In exchange for their shares, MIC's former shareholders received a special dividend of $37 per share, along with units of a new publicly traded company that is not a party to this litigation.

The Individual Defendants were all current or former officers and/or directors of MIC or IMTT during the relevant time frame.[5] Messrs. Hooke and Stewart are named in connection with Moab's claims under Sections 10(b) and 20(a) of the Exchange Act, as well as Sections 11 and 15 of the Securities Act. Messrs. Davis and Courtney are named only in connection with Moab's claims under Sections 10(b) and 20(a). The remaining seven Individual Defendants are named only in connection with Moab's claims under Sections 11 and 15 of the Securities Act.

---

[5] Defendant James Hooke was CEO of MIC and Chairman of IMTT's board until December 31, 2017, when he returned to his native Australia after 11 years in the U.S., including more than eight at the helm of MIC. He was also a director of MIC from September 8, 2017 to September 5, 2018. Compl. ¶ 30. Defendant Jay Davis was MIC's Head of Investor Relations. *Id.* ¶ 31. Defendant Liam Stewart was MIC's CFO. *Id.* ¶ 32. Defendant Richard Courtney was CEO and President of IMTT. *Id.* ¶ 33. Defendant Robert Choi was MIC's Chief Accounting Officer. *Id.* ¶ 344. The remaining Individual Defendants were outside directors of MIC. *Id.*

5

There are two other named defendants, Macquarie Infrastructure Management (USA) Inc. ("MIMUSA") and Barclays Capital Inc. ("Barclays"). MIMUSA is a member of the Macquarie Group that, during the relevant time period, provided services to MIC under the terms of a publicly-disclosed Management Services Agreement. Ex. A (2017 10-K) at 5; Compl. ¶ 29. Barclays served as underwriter for the Secondary Offering. *Id.* ¶ 350.

## II.  Procedural History

In April 2018, Moab's counsel first filed this action, accusing MIC and Messrs. Hooke, Davis, Stewart, and Courtney of securities fraud. The original complaint, filed on behalf of a different plaintiff that has since fallen out of the case,[6] alleged that Defendants had violated Sections 10(b) and 20(a) of the Exchange Act through their "misrepresentations or material omissions concerning [IMTT's] business and the sustainability of the Company's dividend to shareholders." Original Complaint ¶ 2, ECF No. 1. The original complaint alleged that, when MIC later announced that it would be "slashing its dividend" due to "the declining use of heavy residual oil products," MIC's stock price fell. *Id.* ¶ 9.

On June 25, 2018, Moab's counsel filed a motion, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), seeking to have Moab (as opposed to the original named plaintiff) appointed lead plaintiff and to have itself appointed lead counsel. The Court granted that motion on January 30, 2019, and, on February 20, 2019, Moab's counsel filed the operative complaint. The new complaint: (a) grew from 66 paragraphs to over 400, (b) named additional defendants MIMUSA and Barclays, along with seven more individual defendants (six of whom are outside directors of MIC), (c) added a new cause of action against MIMUSA under Section

---

[6] The original named plaintiff, City of Riviera Beach General Employees Retirement System, did not seek appointment as lead plaintiff and is no longer a party to this case.

6

20A of the Exchange Act, and (d) asserted new causes of action under Sections 11, 12(a)(2), and 15 of the Securities Act based on the November 2016 Secondary Offering.  This time, Moab's complaint focused on the assertions that Defendants concealed (a) "[IMTT's] reliance on revenue from the storage of No. 6 oil" (Compl. ¶ 1); (b) the risk that the implementation of "IMO 2020" – a regulation purporting to place a cap on bunker fuel that, on October 27, 2016, was announced to begin in 2020 – "would severely curtail 'the demand for storage'" of No. 6 oil (*id.* ¶ 270); and (c) the risk that IMTT would "need to undertake significant capital expenditures to repurpose" some of its tanks in response to market conditions (*id.* ¶¶ 1, 227).

In April 2019, Defendants moved to dismiss.

### III.   This Court's Decision on Defendants' Original Motions to Dismiss the Complaint

On September 7, 2021, this Court entered its Opinion & Order dismissing the complaint in its entirety.  As this Court found, the complaint's failure to "plausibly allege false statements or omissions" or to "allege facts from which to draw a strong inference of scienter" was fatal to all claims asserted.  Op. at 2.  As the Court observed, the "crux" of the complaint was the contention that Defendants "concealed from investors that IMTT's single largest product was No. 6 oil," which faced severe restrictions "on the bulk of its worldwide use through IMO 2020." *Id.* at 13.  Thus, the "key issue" was "whether Defendants had a duty to disclose the extent to which IMTT's storage capacity was devoted to No. 6 fuel oil." *Id.* (quotation marks and alterations omitted).  This Court found they did not.

First, the Court held that Moab failed to identify any statements that were actionable as "half-truths." *Id.* at 15; *see also id.* at 18–19 (noting that Moab's theory "misses the mark, because simply speaking on one's business does not trigger a duty to disclose all facts an investor may want to know no matter how tangential they are to what the speaker is talking about").  Instead, the Court found that "many" of the statements identified by Moab were "non-specific, generic

7

statements" that "are the type of milquetoast corporate-speak that do not create a duty to disclose more facts." *Id.* at 16 (internal quotation marks omitted). Additionally, "many of Defendants' alleged statements" are non-actionable "backward-looking explanations of historical facts." *Id.* Nor did Moab sufficiently "plead[] facts to support its argument that Defendants knew any alleged statement was untrue or a half-truth when made." *Id.* at 16–17.

Second, the Court rejected Moab's argument that Item 303 of SEC Regulation S-K required Defendants to disclose additional facts concerning IMTT's storage of No. 6 oil, the anticipated impact of IMO 2020, or anything else. *Id.* at 21–22. The Court reasoned that, "[a]lthough [Moab] submits that Item 303 required Defendants to speak to 'th[e] increasing uncertainty' MIC faced," Moab failed to plead either "an uncertainty that should have been disclosed" beyond those already disclosed or "in what SEC filing or filings Defendants were supposed to disclose it." *Id.* at 21. And, "[m]ore to the point," the Court held that Moab "does not allege when Defendants 'actually kn[ew]' of some uncertainty that rose to the level of requiring an Item 303 disclosure" in a pre-February 2018 securities filing. *Id.* at 22.

The Court also dismissed Moab's Exchange Act claims for the additional and independent reason that the complaint failed to adequately plead facts supporting a strong inference of scienter. *Id.* at 22–23. As this Court explained, Moab's failure to "identify with specificity the knowledge Defendants had or when they acquired this knowledge that their statements were false" left its scienter allegations fatally dependent on "disclosures made … later coupled with unsupported assertions that Defendants should have made disclosures sooner." *Id.* at 25 (citations and internal quotation marks omitted). This, as the Court found, was not a basis for a securities fraud claim. The Court also held that Moab had failed to plead that Defendants had a motive to commit fraud. *Id.* at 26–27. As a result, this Court concluded that, "[a]t best, it appears that Defendants were

8

negligent concerning the risks IMTT faced in its exposure to a potential downturn in the demand to store No. 6 fuel oil," which is "not legally sufficient to demonstrate scienter." *Id.* at 28.[7]

Finally, because Moab's other claims required either a primary violation of either the Exchange or Securities Act, the Court dismissed the complaint in its entirety.[8] *Id.* at 28–29.

## IV.     The Second Circuit's Opinion

On December 20, 2022, the Second Circuit vacated this Court's judgment and remanded the case "for further proceedings consistent with this order." Second Circuit Op. at 1. While the Second Circuit agreed with this Court that "the majority of Defendants' alleged misstatements are not actionable," it concluded that Moab adequately pleaded actionable omissions in two respects. First, the Second Circuit found that Moab adequately alleged that MIC failed to make a required disclosure under Item 303 because "IMO's significant restriction of No. 6 fuel oil use was known to Defendants and reasonably likely to have material effects on MIC's financial condition or results of operation." *Id.* at 6. The Second Circuit concluded that this was an actionable omission under

---

[7] Moab's purported concern that IMO 2020 would ultimately decrease demand for storage at IMTT has proven unfounded. In its 2018 Form 10-K, MIC explained that it expected that there would be "increases in storage utilization and an increase in demand for a range of products and services in advance of the implementation of the [IMO 2020] regulations limiting the sulphur content of bunker fuel on January 1, 2020." Ex. B (2018 10-K) at 66. In Q1 and Q2 2019, MIC reiterated its expectation that it expected that there would be growing demand for storage "coinciding with the implementation" of IMO 2020, but noted that "the expected impact on the demand for storage and utilization at IMTT" could not "be determined with certainty at this time." Ex. C (Q1 2019 10-Q) at 9; Ex. D (Q2 2019 10-Q) at 9. By the third quarter of 2019, MIC disclosed that "IMTT is currently experiencing an increase in utilization for storage of heavy and residual products … ***as a result of IMO 2020***." Ex. E (Q3 2019 10-Q) at 9; *see also* Ex. F (2019 10-K) at 51 (stating that there was "an increase in utilization, primarily in the Lower Mississippi River market, related to demand for storage and handling of a range of products related to the implementation of the [IMO 2020] regulations on January 1, 2020").

[8] For this reason, the Court did not address Defendants' argument that Moab had failed to plausibly allege control person liability under Section 20(a) of the Exchange Act against any of the Management Defendants, but in particular Mr. Courtney. As Defendants argued in their original motion to dismiss (*see* Mot. to Dismiss at 31 n.31, ECF No. 101), Moab's allegations of "actual control" by Mr. Courtney – who is not alleged to have been a director, officer, or even an employee of MIC (*see* Compl. ¶ 33) – are particularly deficient.

9

both Section 10(b) of the Exchange Act and Sections 11 and 12(a)(2) of the Securities Act. Second, the Second Circuit concluded that two statements by Defendants concerning MIC's "base of customers" were "half-truths" that failed to provide "all material facts … to permit investors to evaluate the potential risks." *Id.* at 7–8. Relying in large part on MIC's purported failure to make a disclosure under Item 303, the Second Circuit also found that Moab sufficiently alleged the separate element of scienter for purposes of its Section 10(b) claim. *Id.* at 8–9.

The Second Circuit did not analyze any of the alternative grounds for dismissal of the Securities Act claims advanced by Defendants in their prior motions, nor did it address MIMUSA's independent arguments for dismissal under Sections 20(a) and 20A of the Exchange Act. Rather, the Second Circuit remanded the case "for further consideration by the district court." *Id.* at 10.

## V. Subsequent Proceedings and Defendants' Forthcoming Petition for Certiorari to the U.S. Supreme Court

After their petition for rehearing was denied, Defendants moved in the Second Circuit to stay issuance of the mandate pending disposition of Defendants' forthcoming petition for a writ of certiorari to the United States Supreme Court. The central question presented by the petition will be whether the failure to make a disclosure required by Item 303 can serve as the predicate for a private cause of action under Section 10(b), an issue as to which there is an acknowledged circuit split. The Supreme Court granted certiorari on this precise question six years ago in *Leidos, Inc. v. Indiana Public Retirement System*, No. 16-581 (U.S.), but before that case was argued, the parties settled, and it was voluntarily dismissed. Thus, the circuit split persists, the issue remains ripe for review, and there would appear to be a high likelihood that the Supreme Court will again take up the issue.

And, significantly, certiorari is even more critical in this case than before because the decision at issue exacerbates the previously acknowledged and long-entrenched circuit split.

10

Although the Second Circuit had previously opened the door to actions not permitted in other circuits, it did not go nearly as far as it now has in this case with respect to liability predicated on Item 303.  Most notably, the decision here ignores the SEC's own distinction between "*required* disclosures about 'currently known trends … that are reasonably expected to have material effects' and *optional* 'forward-looking disclosure[s]' that 'involve[] anticipating a future trend … or anticipating a less predictable impact of a known event, trend or uncertainty.'"  *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 & n.6 (2d Cir. 2015) (emphases added) (quoting SEC guidance).[9]  For this reason, if the Supreme Court grants certiorari, it may also clarify whether and under what circumstances an Item 303 violation can serve as the predicate for liability under both the Exchange Act *and* the Securities Act.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the court must treat a plaintiff's well-pleaded allegations as true and view them in the light most favorable to the plaintiff, this presumption of truth "is inapplicable to legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (cleaned up).  If, in the end, the complaint's well-pleaded factual allegations are insufficient to "nudge [plaintiff's] claims across the line from conceivable to plausible," dismissal is warranted.  *Twombly*, 550 U.S. at 570.  Additionally, Securities Act claims that "sound in fraud" – as

---

[9] The Second Circuit's decision also went further than any other case has before with its finding that the failure to make a required disclosure pursuant to Item 303 with the element of scienter for purposes of a Section 10(b) claim.

11

Moab's do here – must also satisfy Rule 9(b)'s particularity requirements. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

## ARGUMENT

### I. MOAB'S SECURITIES ACT CLAIMS SHOULD BE DISMISSED

Moab has asserted claims under Sections 11 (Count IV), 12(a)(2) (Count V), and 15 (Count VI) of the Securities Act based on alleged misstatements and omissions in the Offering Documents issued in connection with MIC's November 2016 Secondary Offering. *See* Compl. ¶¶ 352–65. As set forth below, these claims should be dismissed for the simple reason that Moab has failed to allege that it has standing to assert them. Alternatively, because Moab has failed to allege that MIC was a "statutory seller" for purposes of Section 12(a)(2), Count V should be dismissed.

#### A. Moab Has Not Sufficiently Pled Its Standing to Assert Securities Act Claims

Moab's Securities Act claims should be dismissed as a threshold matter based on its failure adequately to allege its own standing to assert them. Section 12(a)(2) provides that a seller shall be liable only "to the person purchasing such security *from him*." 15 U.S.C. § 77*l*(a) (emphasis added). Interpreting that provision, the Supreme Court has held that Section 12(a)(2) liability is limited to public offerings and does not extend to a "private or secondary sale." *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 578, 582 (1995); *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005). In other words, only plaintiffs who purchased securities directly in the Secondary Offering, and not in the aftermarket, may properly assert a Section 12(a)(2) claim.

Although a plaintiff who purchased shares in the aftermarket may, by contrast, have standing to sue under Section 11, it must be able to specifically "trace [its] shares back to the relevant offering." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013); *see In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 755 (1st Cir. 2016). Where, as here, "a company has issued shares under more than one registration statement, the plaintiff must prove

12

that [its] shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement." *Century*, 729 F.3d at 1106; *see Ariad*, 842 F.3d at 755. Multiple circuit courts of appeals have held that, with the Supreme Court's elimination of pure notice pleading, a plaintiff can no longer plead Section 11 standing by alleging merely that it purchased shares "traceable" to a particular offering. *See Century*, 729 F.3d at 1107–08 (citing *Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662); *Ariad*, 842 F.3d at 755–56.

But here, that is all Moab has done. In conclusory fashion, Moab alleges that it purchased "18,800 shares of Macquarie common stock *traceable* to the [Secondary] Offering." Compl. ¶ 27 (emphasis added). However, at the time of the Secondary Offering, there were over 81 million outstanding MIC common shares. Ex. G (Prospectus) at S-9. Without more detailed factual allegations, this is insufficient to establish standing under either Section 11 or 12(a)(2). *See Freidus v. Barclays*, 734 F.3d 132, 141 (2d Cir. 2013); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *27 (S.D.N.Y. Sept. 28, 2012) (neither allegations that shares were purchased "traceable to" offering or exhibit indicating securities were purchased on day of offering were sufficient to establish Section 12(a)(2) standing because it "does not make clear whether [plaintiff] purchased the shares directly or in a secondary market 'traceable'" to the offering); *Merrill Lynch*, 714 F. Supp. 2d at 484 (dismissing complaint where plaintiffs "rather coyly" alleged only that they purchased certificates "pursuant and/or traceable" to the offering); *In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) (dismissing Section 12(a)(2) claim for lack of standing where plaintiff alleged "they bought their shares 'pursuant to or traceable to' the Prospectus"); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *16–17 (D.N.J. Dec. 31, 2018) (finding allegation that plaintiffs purchased stock "pursuant to and/or traceable to the IPO" insufficient); *Transenterix Inv'r Grp. v. Transenterix, Inc.*, 272 F. Supp. 3d 740, 761 (E.D.N.C. 2017)

13

(allegations that plaintiffs "purchased [the securities] offered in the [offering at issue]" insufficient to establish standing under Section 11).

For this reason, Moab has failed to adequately allege that it has standing to bring the Securities Act claims, warranting dismissal.

### B. Moab Has Not Alleged That MIC Was a Statutory Seller

Moab's Section 12(a)(2) claim is subject to dismissal for yet another independent reason. To state a claim under that provision, a plaintiff must allege with particularity that it bought the security from a "statutory seller." *See, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Specifically, a defendant qualifies as a statutory seller only if it: "(1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicit[ed] the purchase [of a security], motivated at least in part by desire to serve his own financial interests or those of the securities' owner." *Perry v. Duoyuan Printing*, 2013 WL 4505199, at *12 (S.D.N.Y. Aug. 22, 2013) (quoting *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988)).

Here, Moab alleges in only the most conclusory fashion that "[MIC] and Barclays were sellers, offerors, and solicitors of sales of the securities offered using the Offering Documents in the Offering." Compl. ¶ 386. The complaint, however, offers no factual allegations to support this conclusion. Nor could it. After all, as the Prospectus makes clear, MIMUSA was the sole selling shareholder in the Offering. *See* Ex. G (Prospectus) at cover page, S-17.

Nor has Moab made any plausible allegations that MIC "successfully solicit[ed] the purchase [of a security], motivated at least in part by desire to serve [its] own financial interests." *Perry*, 2013 WL 4505199, at *12. Instead, Moab relies on its assertion that MIC was a "solicitor," but such "bald allegations of solicitation are insufficient to sustain [defendant's] liability as a 'seller'" under Section 12(a)(2). *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002) (dismissing Section 12(a)(2) claim where "there is no factual allegation

14

that [defendant] had direct contact with any plaintiff … [nor any] factual allegation of specific conduct on the part of [defendant] to solicit purchases of the security"); *see also Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir.1988) ("While there is no doubt that [defendant] played a major role in setting up the [deal], that is not sufficient to cast [it] as a 'seller.' Instead, plaintiffs must show that [defendant] actually solicited their investment[.]"); *Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("[Plaintiff] must allege not only that [defendant] actively solicited investors with respect to this transaction but that he purchased securities as a result of [the] solicitation."). There are no allegations, for example, that MIC engaged in "road shows" or other types of promotional interviews in which they solicited the purchase of securities through the Secondary Offering. *Cf. Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (allegations that defendant "distributed the marketing materials 'through their website and other channels'" insufficient where the complaint failed to otherwise allege that the defendants 'actively or directly marketed the []funds to investors"). Nor has Moab alleged that MIC stood to directly benefit from the sales; indeed, the Prospectus makes clear that MIC "will not receive any proceeds from the sale of the shares by the selling shareholder." Ex. G (Prospectus) at cover page; *see id.* at S-16; *see also* Compl. ¶ 307 (proceeds raised were "exclusively for the benefit of Macquarie Management").

Accordingly, the complaint fails adequately to allege that MIC acted as a statutory seller, providing another independent basis for dismissal of plaintiff's Section 12(a)(2) claim.

### C.  Moab's Claim Under Section 15 Should Be Dismissed

Because Moab has failed to allege a primary violation of either Section 11 or 12(a)(2), its claim under Section 15 should also be dismissed. *See* 15 U.S.C. § 77*o*(a); *see also, e.g.*, *In re Lehman Bros. Mortg. Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) ("To establish § 15 liability, a plaintiff must show a 'primary violation' of § 11 and control of the primary violator by

15

defendants.").

## CONCLUSION

For the reasons stated above, the Securities Act claims (Counts IV–VI) should be dismissed in their entirety, and Defendants Choi, Stanley, Brown, Carmany, Lenz, Sananikone, and Webb should be dismissed from this Action.

Dated:  April 6, 2023

Respectfully submitted,

**WINSTON & STRAWN LLP**

 s/ John E. Schreiber
John E. Schreiber
Kerry C. Donovan
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile:  (212) 294-4700
jschreiber@winston.com
kcdonovan@winston.com

*Attorneys for Macquarie Infrastructure Corporation and the Individual Defendants*